■ NATIONAL BANK OF PAKISTAN, Plaintiff, v SAEED A. BASHAM et al., Defendants. NATIONAL BANK OF PAKISTAN, Appellant, v FIREMAN'S FUND INSURANCE COMPANY, Respondent and Third-Party Plaintiff, et al., Third-Party Defendants.—Order, Supreme Court, New York County (Alvin Klein, J.), entered December 30, 1987, which, *inter alia,* denied plaintiff-appellant's motion for summary judgment against defendant-respondent Fireman's Fund Insurance Company, reversed, on the law, to the extent appealed from, and the motion for summary judgment granted, without costs.

On or about September 25, 1983, plaintiff-appellant National Bank of Pakistan (appellant) contracted with defendant-respondent Fireman's Fund Insurance Company (respondent) for a policy of fidelity and other insurance, and a banker's blanket bond. Among the losses covered under the policy were those "resulting directly from dishonest or fraudulent acts of an Employee committed alone or in collusion with others".

The insurance policy was in effect on April 10, 1985, when appellant discovered that defendant Saeed A. Basham, an officer and manager of its United Nations Plaza branch, had committed fraudulent acts while in its employ. Specifically, Basham had allowed a bank customer, defendant Sana Travel Service Ltd. (Sana), to receive immediate credit to its account for five checks totaling $256,000 from drawers whose checks Basham had previously had occasion to dishonor due to closed accounts or insufficient funds. When the five checks credited to Sana were dishonored as well, Basham did not debit the Sana account, as required by law and proper banking practice.

Instead, Basham deliberately debited a wholly unrelated account, that of Saigon Flour Mills, which had been frozen, since 1975, under the foreign assets control regulations, and would therefore be unlikely to be checked or investigated. To

ensure that the frozen account's funds would not be traced to the Sana account, Basham did not merely deduct the $256,000 he needed, but cleared out the frozen account's entire balance of $306,218, and attempted to hide the difference of approximately $50,000 in "sundry" miscellaneous accounts.

Upon discovering Basham's fraudulent maneuverings, appellant discharged him, and initiated both criminal and civil proceedings against him. Appellant also timely notified its insurance broker of its loss of $256,000 on April 24, 1985, and filed formal proof thereof with respondent on or about May 22, 1985. The within action was brought when respondent failed to honor the claim.

On January 8, 1987, as part of a criminal plea negotiation, Basham waived his right to be prosecuted by indictment and consented to prosecution by superior court information, the top count of which charged him with grand larceny in the second degree, a class C felony (Penal Law § 155.40). Basham then pleaded guilty to the second count of the information, falsifying business records in the first degree (Penal Law § 175.10), a class E felony.

By notice of motion dated March 17, 1987, appellant moved for summary judgment against respondent on the grounds that there were no triable issues, and that defendant had no genuine defense. The court below denied the motion, citing as issues of fact the questions of whether Basham's actions constituted "dishonesty" as defined in the policy, and whether appellant had timely filed its proof of loss. We reverse.

The record clearly establishes, and it is undisputed, that at all relevant times appellant had a valid policy of insurance with respondent, which specifically covered losses caused by the "dishonest or fraudulent acts" of an employee. It is further undisputed that Basham, appellant's employee, committed acts which were dishonest and fraudulent, as those terms are commonly defined, and that this resulted in a loss to appellant. Also contained in the record is evidence that appellant filed its proof of loss almost immediately after the fraud was discovered. Indeed, respondent has abandoned any claim of untimeliness on appeal.

With respect to respondent's contention, adopted by the dissent, that there exists an issue of fact as to whether Basham's actions may be classified as "dishonest" for the purposes of the policy, we find this argument to be without merit. Specifically, respondent claims that there remains a factual controversy regarding whether Basham exhibited a

"manifest intent (a) to cause the Insured to sustain such loss", as required under the policy. The record reveals, however, that Basham intentionally and deliberately chose not to debit the Sana account for the dishonored checks, and instead took the funds from an unrelated frozen account. In so doing, Basham intended that the loss would be sustained by the bank, for despite his efforts to conceal the fact that $256,000 was missing, this officer and manager of the bank was aware, when he declined to debit the Sana account and improperly debited another, that the bank would ultimately bear the responsibility for the misappropriated moneys. And, indeed, it did. This employee's machinations establish the very circumstances for which fidelity insurance was obtained.

Thus, we conclude that respondent's arguments "suggest only 'feigned' and unsubstantiated defenses *(Di Sabato v Soffes,* 9 AD2d 297, 300)" and are "insufficient to raise a bona fide and genuine issue". *(Capri Jewelry v Chayavi,* 117 AD2d 464, 468.)

Accordingly, appellant is entitled to summary judgment. Concur—Sullivan, Kassal, Rosenberger and Smith, JJ.

Sandler, J. P., dissents in a memorandum as follows: The employee's fidelity bond under which the plaintiff is seeking to recover in this action provides in pertinent part as follows:

"(A) Loss resulting directly from dishonest or fraudulent acts of an Employee committed alone or in collusion with others.

"Dishonest or fraudulent acts as used in this Insuring Agreement shall mean only dishonest or fraudulent acts committed by such Employee with the manifest intent

"(a) to cause the Insured to sustain such loss, and

"(b) to obtain financial benefit for the Employee or for any other person or organization intended by the Employee to receive such benefit".

Assuming that the actions of the employee to conceal the fact of previous overdrafts in the account of Sana Travel Service Ltd. constituted dishonest or fraudulent acts within the meaning of the bond (which I think would be a reasonable evaluation of the situation), the record fails to establish as a matter of law that these activities, to which the employee pleaded guilty, resulted directly in the loss for which plaintiff bank seeks recovery. On the face of the record, the loss occurred when checks credited by the employee to the account before they had time to clear were returned unpaid for "insufficient funds" and "account closed" by the drawee bank.

Neither the plea of guilty, nor any statement by the employee in connection with the plea of guilty, nor anything else in the record establishes as a matter of law that his act in prematurely crediting the account with those checks was done by the employee "with the manifest intent (a) to cause the Insured to sustain such loss".

It of course may develop on a trial that this was in fact the employee's intent. It may also develop on a trial that the plaintiff bank would have been able to recover the loss except for the employee's actions in concealing that which had occurred. What the record does not do, however, is establish as a matter of law a direct loss attributable to a dishonest or fraudulent act committed by an employee "with the manifest intent (a) to cause the Insured to sustain such loss". In fact, the employee's plea allocution more closely indicates that his initial crediting of Sana's account, which may have been the act which caused the bank's loss, was an error in judgment of a kind clearly not covered by the policy, and that his later falsification of records was intended to conceal his error in the hope that Sana would ultimately honor its promise to cover the dishonored checks with money from abroad. As here pertinent the following exchange appears in the allocution:

"THE COURT: Can you tell me exactly what you did.

"DEFENDANT: Your Honor, I transferred the money from the account and credited the account of Chemical Bank.

"THE COURT: Why?

"DEFENDANT: Your Honor, the few checks were deposited by Sana Travel Limited which bounced. As a matter of fact, the amount of the bounced check should have been debited to the account of the Sana Limited. Sana did not have sufficient balance in the account and they promise the money is coming from abroad. In order that this should not come to the knowledge of my superiors for [the] time being I debited this amount to a dormant account and credited it to Chemical Bank."

Accordingly, the IAS court was correct in concluding that factual issues were presented which require denial of the motion for summary judgment.