NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0014n.06

No. 13-3610

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

FILED
Jan 14, 2014
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| CAROLINA CASUALTY INSURANCE COMPANY, | ) ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Plaintiff-Appellant, | ) | STATES DISTRICT COURT FOR THE |
| | ) | SOUTHERN DISTRICT OF OHIO |
| v. | ) | |
| | ) | |
| CANAL INSURANCE COMPANY and | ) | OPINION |
| GREEN LINE TRUCKING, INC., | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| _____ | ) | |

**Before: COLE, GILMAN, and DONALD, Circuit Judges.**

**RONALD LEE GILMAN, Circuit Judge.** This appeal involves a dispute between two insurers, Carolina Casualty Insurance Company and Canal Insurance Company, over whether a policy issued by Canal provides primary coverage for personal injuries incurred in a collision between a tractor-trailer and a bus. When Canal refused to provide any coverage following the accident, Carolina filed a declaratory judgment action under 28 U.S.C. § 2201(a) against Canal and Green Line Trucking, Inc., seeking a declaration that the Canal policy is primary. After both insurance companies moved for summary judgment, the district court denied Carolina's motion and entered judgment in favor of Canal. Carolina now appeals from that judgment. For the reasons set forth below, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.

## I.  BACKGROUND

Jama Farah was involved in an accident in December 2007 when the tractor-trailer that he was driving jackknifed during snowy weather on an interstate highway in New Jersey.  Soon afterward, a bus hit the disabled tractor-trailer, injuring a number of the bus passengers.  Several of them sued Farah and the company for whom he was driving, Give Me the Freight, LLC (GMTF), in New York state court.

At the time of the accident, Farah was working under a contract with GMTF to haul mail from Alabama to New Jersey.  The truck involved in the accident was a 2001 Freightliner tractor that was co-owned by Farah and Mohammed Yussuf.  Yussuf also owned Green Line, a trucking company insured by Canal.

Farah was unable to obtain insurance coverage from GMTF when the mail-hauling contract commenced, so he turned to Green Line to procure coverage for the Freightliner.  Green Line, through Yussuf, agreed to add the Freightliner to its commercial insurance policy with Canal in exchange for $800 to $1000 from Farah (the exact amount is unspecified in the record).  An endorsement to the Canal policy lists the Freightliner as a "Covered Auto."

Farah filed a claim with Canal after the December 2007 accident, but Canal denied coverage.  Canal also refused to defend and indemnify Farah and GMTF in the New York lawsuits.  Carolina, for its part, undertook Farah's defense pursuant to a federally mandated endorsement (known as an "MCS-90") contained in the insurance policy that Carolina had issued to GMTF.  In situations where no other insurance coverage is available, the MCS-90 obligates an insurer (here, Carolina) to pay any final judgment against an insured for liability arising from the

insured's contractual operation of a commercial vehicle irrespective of whether the commercial vehicle is specifically described in the insurance policy. Canal concedes that if its policy is deemed to provide primary coverage, then Carolina's MCS-90 is not triggered and Carolina has no obligation to Farah or GMTF.

Dissatisfied with Canal's denial of coverage, Carolina filed a declaratory judgment action against Canal in the United States District Court for the Southern District of Ohio in August 2011. Carolina sought a declaration that Canal, and not Carolina, is required to defend and indemnify Farah and GMTF in the underlying personal-injury actions. The parties filed cross-motions for summary judgment following discovery. In its summary-judgment order, the district court concluded that Farah did not qualify as a "permissive user" of a "Covered Auto" within the meaning of the Canal policy. Because Farah was not deemed a permissive user, the district court reasoned, Canal is not required to defend and indemnify Farah and GMTF. The court accordingly entered final judgment in favor of Canal. This timely appeal by Carolina followed.

## II. ANALYSIS

### A. Standard of review

We review the district court's grant of summary judgment de novo. *Martin Cnty. Coal Corp. v. Universal Underwriters Ins. Co.*, 727 F.3d 589, 593 (6th Cir. 2013). Summary judgment is proper where there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In considering a motion for summary judgment, the district court must construe the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

475 U.S. 574, 587 (1986). The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).

## B. Canal's policy provides primary coverage

Carolina offers several arguments regarding the alleged errors of the district court, but its appeal ultimately rises or falls on the single question of whether Farah qualifies as a "permissive user" under the terms of the Canal policy issued to Green Line. If Farah is a permissive user, then Canal must defend and indemnify Farah and GMTF in the underlying personal-injury actions. On the other hand, if Farah does not qualify as a permissive user, then Canal has no such duty. The answer to the permissive-user question in turn depends on whether Green Line "own[ed], hire[d] or borrow[ed]" the Freightliner. Carolina contends that Green Line should be considered the owner of the Freightliner under the terms of Canal's policy.

In response, Canal argues as a threshold matter that Carolina's argument regarding ownership is not properly before us because Carolina allegedly waived this argument by failing to present it to the district court. But the district court granted Canal's motion for summary judgment when it concluded, among other things, that the Canal policy does not provide coverage for "an accident in which Green Line gave permission for someone to drive a covered vehicle *that it did not own*, hire or borrow." *Carolina Cas. Ins. Co. v. Canal Ins. Co.*, 940 F. Supp. 2d 753, 760 (S.D. Ohio 2013) (emphasis added).

Furthermore, even if the ownership issue was not squarely presented to the district court by Carolina, there was no unfair surprise to Canal. *See Rice v. Jefferson Pilot Fin. Ins. Co.*, 578 F.3d 450, 454 (6th Cir. 2009) (explaining that one of the purposes of the doctrine is to

prevent unfair surprise). Nor is waiver an absolute rule. *See Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996) (holding that "this Court has discretion to entertain novel questions"). Because the interpretation of an insurance contract is a purely legal inquiry, *21st Century Ins. Co. v. Estate of Doubrava*, No. 97903, 2012 WL 3041178, at *1 (Ohio Ct. App. July 26, 2012), we see no reason for us not to decide the issue of ownership on appeal.

Turning to the merits of the case, we now examine whether the Freightliner is a vehicle that Green Line owned within the meaning of Canal's policy. The parties do not dispute that Ohio law governs the interpretation of the policy in question. Under Ohio law, an insurance policy "is a contract and . . . is to be given a reasonable construction in conformity with the intention of the parties as gathered from the ordinary and commonly understood meaning of the language employed." *Dealers Dairy Prods. Co. v. Royal Ins. Co.*, 164 N.E.2d 745, 747 (Ohio 1960); *see also Bennett v. State Farm Mut. Auto. Ins. Co.*, 731 F.3d 584, 585 (6th Cir. 2013) (explaining that Ohio courts "construe insurance agreements in accordance with the same rules as other written contracts") (internal quotation marks omitted). Terms that are not defined in an insurance policy "must be given their natural and commonly accepted meaning." *Fed. Ins. Co. v. Exec. Coach Luxury Travel, Inc.*, 944 N.E.2d 215, 216 (Ohio 2010).

The Canal policy, in relevant part, expressly defines an "insured" as "[a]nyone else while using with your permission a covered 'auto' you own, hire, or borrow . . . ." Canal does not dispute that Farah had Green Line's permission to use the Freightliner to haul mail for GMTF. Farah co-owned the truck, after all, with Green Line's owner (Yussuf), and Green Line had requested that the truck be insured. Nor is there any question that the Freightliner was a "Covered Auto" under Green Line's policy with Canal. Moreover, Canal concedes that "as a

truck added as a scheduled vehicle to the Canal Policy by endorsement, Farah's truck qualified as a covered 'auto' under the terms of the Policy." The only remaining question, then, is whether Green Line owned the Freightliner within the meaning of the Canal policy.

Carolina argues that because the Freightliner is listed by endorsement on Canal's form titled "SCHEDULE OF COVERED AUTOS YOU OWN," the truck is by definition one that Green Line owned. The backbone of Carolina's argument is that the listing of a vehicle on the form obviates any need to look outside the policy for the meaning of the term "own." Put another way, Carolina contends that legal ownership of the Freightliner is irrelevant because the Canal policy expressly refers to the truck as a "COVERED AUTO[ ] YOU OWN," thereby trumping legal ownership.

Canal responds that ownership in the insurance-policy context is determined by the Ohio Uniform Commercial Code (UCC). That assertion is correct as a general proposition, but it is not applicable under the present circumstances. Ohio courts have applied § 2-401 of the Ohio UCC to determine whether a person owned a vehicle and, as a consequence, whether an insurance policy provided coverage for an accident. *See Artisan & Truckers Cas. Co. v. JMK Transp., LLC*, 994 N.E.2d 528, 531–32 (Ohio Ct. App. 2013) (applying § 2-401 of the Ohio UCC to identify the owner for purposes of determining insurance coverage in an accident where the phrase "autos owned by you" was not defined in the policy).

Here, in contrast, Canal's policy "marks out its . . . coverage" using plain language, so there is no need to refer to the Ohio UCC. *See Bennett*, 731 F.3d at 585–86 (holding that the definition of the term "occupant" was broad enough to include a person on a vehicle's hood because the "policy . . . define[d] the term" that way). If the plain language of the

policy did not refer to the Freightliner as a "COVERED AUTO[ ] YOU OWN," then we would indeed look to the Ohio UCC to construe the term "own." *See Artisan & Truckers Cas. Co.*, 994 N.E.2d at 531–32. Green Line, to be sure, did not own the Freightliner in the ordinary sense of the term because Green Line's name does not appear on the certificate of title or the registration. Accordingly, absent the specific contractual language, we would apply the definition contained in the Ohio UCC.

But Canal's policy lists the Freightliner as a "COVERED AUTO[ ] YOU OWN" and defines an "insured" as "[a]nyone else while using with your permission a *covered 'auto' you own*, hire, or borrow . . . ." (emphasis added). The same phrase—"covered auto you own"—appears in both definitions. If we adopted Canal's view, which would define "own" differently depending on where the term appears in the policy, the "COVERED AUTO[ ] YOU OWN" language would give rise to an internal ambiguity. This is an impermissible result under Ohio law. *See Cincinnati Ins. Co. v. CPS Holdings, Inc.*, 875 N.E.2d 31, 35 (Ohio 2007) (explaining that insurance contracts must be "read as a whole"); *see also Talbert v. Cont'l Cas. Co.*, 811 N.E.2d 1169, 1172 (Ohio Ct. App. 2004) (cautioning courts to avoid "contract interpretations which render contracts illusory or unenforceable") (internal quotation marks omitted). We therefore conclude that Green Line owned the Freightliner within the meaning of Canal's policy.

Seeking to avoid this result, Canal first argues that Carolina is attempting to manufacture coverage through estoppel. As explained above, however, the policy language that Canal itself drafted—and not equitable principles—gives rise to coverage. So Canal's estoppel argument is without merit.

Canal next argues that the "Trucker's Endorsement" contained in its policy bars coverage. This endorsement excludes from coverage "any person, firm or organization using the described 'auto' pursuant to any lease, contract of hire, bailment, rental agreement, or any similar contract or agreement either written or oral, expressed or implied." Canal asserts that because Farah was using the Freightliner pursuant to an oral lease with GMTF, he and GMTF are ineligible for coverage under the Canal policy.

We are not persuaded by Canal's argument. For one thing, Farah was obviously not a lessee of the very truck he co-owned. And, as previously discussed, GMTF could not be the lessor of the truck because GMTF never had title to the same. We have, moreover, rejected a similar argument by Canal in a recent case. *See LM Ins. Corp. v. Canal Ins. Co.*, 523 F. App'x 329, 336 (6th Cir. 2013) (holding that the truck in question was "not being used pursuant to a contract of hire" as described in an identically phrased Trucker's Endorsement because the contract at issue was primarily a personal services contract and the truck was merely an incidental component of that service) (internal quotation marks omitted). Farah's deposition testimony also makes clear that GMTF hired him primarily for his services (i.e., to haul mail from Alabama to New Jersey), and that "his truck was incidental to [providing] that service." *See id.*; *see also Liberty Mut. Fire Ins. Co. v. Canal Ins. Co.*, No. A.1:96CV261-D-D, 1997 WL 786760, at *6 (N.D. Miss. Nov. 13, 1997) (holding that Canal could not deny primary coverage pursuant to the Trucker's Endorsement where the contract was primarily one for personal services). At bottom, the record compels the conclusion that the contract between Farah and GMTF was a contract for personal services. For these reasons, the Trucker's Endorsement does not preclude coverage in this case.

Finally, we note that construing the Canal policy in favor of coverage fits with Ohio law and the parties' expectations. Ohio law strongly disfavors illusory coverage. *See Talbert*, 811 N.E.2d at 1172 (explaining that courts should avoid "contract interpretations which render contracts illusory or unenforceable") (internal quotation marks omitted). Canal offers no serious argument that Farah or Green Line procured coverage for the Freightliner through fraud or misrepresentation. *See United States v. Corrado*, 304 F.3d 593, 611 n.12 (6th Cir. 2002) (explaining that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived") (internal quotation marks omitted). Moreover, if actual ownership were as important to Canal as it now claims, Canal could have required Green Line to submit proof of actual ownership before adding any vehicles to its policy. Alternatively, Canal could have defined the word "own" in UCC terms in its policy. But Canal did neither. It instead accepted a premium payment from Green Line that added the Freightliner as an owned vehicle without imposing any condition of actual ownership. Canal in effect merged the potentially separate concepts of (1) being a covered auto, and (2) being a covered auto *owned by Green Line* into a single category by its own choice of language, and it must now live with that choice. Otherwise, Green Line's premium payment would be for naught, and the policy language listing the Freightliner as a "COVERED AUTO[ ] YOU OWN" would be rendered meaningless.

In sum, we hold that the Canal policy provides primary coverage for Farah and GMTF. And because the Canal policy is primary, the MCS-90 endorsement in Carolina's policy is not triggered. Canal, not Carolina, must defend and indemnify Farah and GMTF. We leave to the district court the task of determining the amount that Canal must reimburse Carolina for the

*Carolina Cas. Ins. Co. v. Canal Ins. Co. et al., No. 13-3610*

expenditures that Carolina has incurred in connection with the New York lawsuits.

### III.  CONCLUSION

For all of the reasons set forth above, we **REVERSE** the judgment of the district court and **REMAND** the case for further proceedings consistent with this opinion.