NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 14a0307n.06

No. 13-1752

FILED
Apr 23, 2014
DEBORAH S. HUNT, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

BANK OF ANN ARBOR,

      Plaintiff-Appellee,

v.

EVEREST NATIONAL INSURANCE
COMPANY,

      Defendant-Appellant.

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF MICHIGAN

BEFORE:    DAUGHTREY, CLAY, and STRANCH, Circuit Judges.

**CLAY, Circuit Judge.** Everest National Insurance Company ("Defendant") appeals the district court's grant of summary judgment to the Bank of Ann Arbor ("Plaintiff"). Defendant also appeals the denial of its cross motion for summary judgment and motion for reconsideration. Defendant argues that the district court erred in refusing to hear a new legal argument it raised against Plaintiff's insurance claim for the first time in its motion for reconsideration. Defendant also contends that the district court erred in not finding that the "loan loss" provision in the bond excluded coverage of Plaintiff's claim. For the reasons set forth below, we disagree and **AFFIRM** the district court's decision to grant Plaintiff's motion for summary judgment and to deny Defendant's motion for summary judgment and motion for reconsideration.

## BACKGROUND

### A. Procedural History

This case involves an insurance coverage dispute. Defendant issued a Financial Institution Bond ("Bond") to Plaintiff on December 22, 2010. Plaintiff contends that a loss it incurred on October 4, 2011, as a result of a fraudulent wire transfer request, was covered by the Bond. Defendant disagreed and on January 23, 2012, denied coverage.

Plaintiff filed suit on March 20, 2012, to recover the loss it incurred as a result of the fraudulent wire transfer request. The parties filed cross motions for summary judgment and the district court granted Plaintiff's motion for summary judgment and denied Defendant's motion. Defendant subsequently moved for reconsideration of that decision, arguing that the district court's opinion rested on palpable defects and errors of law. The district court disagreed and denied the motion for reconsideration. Defendant timely appealed the district court's order denying its motion for summary judgment and granting summary judgment to Plaintiff, as well as the court's order denying the motion for reconsideration.

### B. Factual Background

The facts in this case are not being disputed by either side. On December 22, 2010, Plaintiff purchased a Financial Institution Bond from Defendant. The Bond offers indemnification coverage for specific risks typically borne by banks such as losses from robbery or forgery. The Bond was effective from January 1, 2011 through January 1, 2012. On October 4, 2011, Plaintiff received a wire transfer request for $196,000 via facsimile from an individual purporting to be its customer (the bank's actual customer will be referred to hereinafter as the "true customer" in the interests of privacy and pursuant to a Stipulated Protective Order regarding the non-disclosure of the customer's identifying information). The wire transfer

request asked that funds from the true customer's home equity line of credit ("HELOC") be wired to a bank in South Korea. The request contained the true customer's name and handwritten signature, email address, home address, telephone number, and all of the necessary account information.

In order to prevent fraud, Plaintiff's established practice is to compare the signature on such a wire transfer request to the signature maintained in its file and to confirm the request by telephoning the true customer. Plaintiff followed these procedures upon receiving this particular fax request. Plaintiff confirmed that the signature on the faxed wire transfer request was the same as the signature in the true customer's file. Plaintiff then called the telephone number in the file to verify the request with an individual who identified himself as the true customer. After completing the verification procedure, Plaintiff, in good faith and in reliance on the instructions and signature on the wire transfer request, transferred $196,000 from the true customer's HELOC to an account at Korea Exchange Bank in Seoul, South Korea. (R. 15, Affidavit of Patti Judson, at 347–48.)

Two days later, Plaintiff received a second faxed wire transfer request from the same individual purporting to be the true customer. The request this time was for $98,000 and again asked that the funds be transferred from the HELOC account to the same account in South Korea. This second wire transfer request was received by an employee who coincidentally happened to know the true customer personally and questioned why he would want to wire money to South Korea. A review of the true customer's file revealed that on September 30, 2011, Plaintiff had received an email from an individual identifying himself as the true customer inquiring how to change his telephone number on record with the Bank. Plaintiff had informed the sender that such requests must be in writing. Later that same day, Plaintiff received another

email purportedly from the true customer with an attached signed formal, written request to have his telephone number changed. After comparing the signature on the letter request to the signature in the true customer's file, Plaintiff changed the telephone number in its files.

Upon discovering that the contact information had been changed just a few days before the first wire transfer, Plaintiff immediately contacted the true customer at the older number and learned that he had not made either wire transfer request. Accordingly, the second request was not honored and Plaintiff contacted local law enforcement to assist in the investigation. Plaintiff repaid the $196,000 that was fraudulently transferred from the true customer's HELOC account to the imposter's account in South Korea.

On October 4, 2011, after completing its investigation, Plaintiff notified Defendant of the above facts and requested coverage for the $196,000 wire transfer. Plaintiff's request to Defendant was timely and satisfied the requirements for the submission of a claim under the terms of the Bond. On January 23, 2012, Defendant denied coverage to Plaintiff on two grounds. First, Defendant asserted that a rider to the Bond precluded coverage. Second, Defendant asserted that the loss was excluded under the "loan loss" provision in Section 2(e) of the Bond. The only contention between the parties in this case is whether the Bond covers Plaintiff's claim.

## DISCUSSION

### *Standard of Review*

We review a district court's grant or denial of summary judgment *de novo*. *Discount Tobacco City & Lottery, Inc.*, *v. United States*, 674 F.3d 509, 521 (6th Cir. 2012). Likewise, we review the district court's denial of Defendant's motion for reconsideration of the summary judgment ruling *de novo*. *Med. Mut. of Ohio v. k. Amalia Enters. Inc.*, 548 F.3d 383, 389–90 (6th Cir. 2008). However, the district court's "refusal to consider evidence produced for the first

4

time on a motion to reconsider will be reversed only if the refusal constitutes an abuse of discretion." *Id*. (quoting *Sommer v. Davis*, 317 F.3d 686, 691 (6th Cir. 2003)).

Summary judgment is appropriate if the pleadings, the discovery, and the disclosure materials on file, and any affidavits "show [] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue of fact is "genuine" if the evidence is such that a reasonable person could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). After the moving party has satisfied its burden, the burden shifts to the non-moving party to set forth "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 476 U.S. 574, 587 (1986).

This court views all evidence in the light most favorable to the non-moving party, and draws all reasonable inferences in its favor. *See id*.; *Hoover v. Walsh*, 682 F.3d 481, 492 (6th Cir. 2012) (citing *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011)); *Bletz v. Gribble*, 641 F.3d 743, 757 (6th Cir. 2011) ("In reviewing the district court's decision, we view all facts in a light most favorable to the non-moving party and draw inferences in favor of the non-movant.").

For the purposes of this appeal, there is no genuine dispute as to a material fact. Both parties agree that Plaintiff received a wire transfer request via facsimile from an imposter purporting to be its true customer and $196,000 was subsequently wired from the true customer's HELOC to an overseas account in South Korea. The only issue on appeal is whether the Bond covers the type of loss alleged by Plaintiff.

## I.    Defendant's motion for reconsideration

Federal Rule of Civil Procedure 59(e) permits a party to file a motion to alter or amend a judgment. The Sixth Circuit has determined, however, that a motion to alter or amend judgment

may be granted only: "(1) to correct a clear error of law; (2) to account for newly discovered evidence or an intervening change in the controlling law; or (3) to otherwise prevent manifest injustice." *CGH Transp. Inc. v. Quebecor World, Inc.,* 261 F. App'x. 817, 823 (6th Cir. 2008) (citing *GenCorp, Inc. v. Am. Int'l Underwriters,* 178 F.3d 804, 834 (6th Cir. 1999)).

It is well-settled that "parties cannot use a motion for reconsideration to raise new legal arguments that could have been raised before a judgment was issued." *Roger Miller Music, Inc. v. Sony/ATV Publ'g,* 477 F.3d 383, 395 (6th Cir. 2007). Additionally, reconsideration motions cannot be used as an opportunity to re-argue a case. Furthermore, a party may not introduce evidence for the first time in a motion for reconsideration where that evidence could have been presented earlier. *See, e.g., Sommer,* 317 F.3d at 691; *CGH,* 261 F. App'x. at 824 (affirming denial of reconsideration and stressing: "It is hard to imagine how an affidavit from one of [plaintiff's] own witnesses would have been previously unavailable to [plaintiff], and [plaintiff] has not explained why it failed to introduce this evidence in opposition to summary judgment.").

Defendant's letter denied Plaintiff coverage based on two reasons: 1) the Electronic/Computer Systems Rider and 2) the "loan loss" provision in Section 2(e) of the Bond. Neither reason cited by Defendant in the denial letter mentioned the language contained in Agreement D of the Bond, mentioned the word "original," or addressed in any manner whether a faxed instruction is covered by the Bond. Agreement D of the Bond, entitled "Forgery or Alteration," guarantees coverage of any:

> "Loss resulting directly from the Insured having, in good faith, paid or transferred any Property in reliance on any Written **Original**. . .
>
> > (4) Withdrawal Order [or]
> >
> > (6) instruction or advice purportedly signed by a customer of the Insured. . .which
> >
> > > (a) bears a handwritten signature of any maker, drawer or endorser which

is a Forgery…."

Defendant in its motion for reconsideration raised for the first time the argument that the Bond *only* covers losses resulting from reliance on a forged wire transfer if Plaintiff had actual physical possession of the "Original" instrument on which the forgery appeared. Defendant argues that it is undisputed that Plaintiff relied on a faxed wire transfer request. And since a fax is a reproduction of a document fed into a fax machine by the sender, it is by definition not an Original and thus not the first rendering or archetype of a document. Therefore, Defendant concludes that the faxed wire transfer request was not covered by the Bond.

Defendant made no mention of this argument regarding the language contained in Agreement D in any of its pleadings prior to the district court's entry of judgment. Defendant did not raise this issue in its Answer or in either of its two briefs in district court. Instead, Defendant focused solely on the "loan loss" exclusion in section 2(e) of the Bond as the reason the district court should deny Plaintiff coverage under the Bond. Not until the district court entered its judgment did Defendant raise a defense based on the language contained in Agreement D. As a result, the district court did not abuse its discretion when it refused to entertain this new argument which should have, and could have been raised earlier.

In response, Defendant cites *Carolina Casualty* to support its contention that this Court should entertain this legal argument even if it was not raised earlier. *Carolina Cas. Ins. Co. v. Canal Ins. Co.*, 13-3610, 2014 WL 114667 (6th Cir. Jan. 14, 2014). Defendant argues that this case holds that new legal arguments can be raised in this Court, even if those arguments were "not squarely presented" below. *Id.* at *2. Defendant is wrong because in *Carolina Casualty* this Court held that waiver did not apply when the lower court rested its holding on the new legal issue before the court. *Id.* In the instant case, however, the lower court did not rest its holding

on the fact that a fax was an Original within the meaning of the Bond. The lower court rested its holding on the fact that section 2(e) of the Bond did not preclude coverage of Plaintiff's claim. Accordingly, this case can be distinguished from *Carolina Casualty*.

In addition to federal rules, state law precludes Defendant from raising new legal arguments denying coverage on appeal. Michigan law holds that, "[a]s a general rule, once an insurance company has denied coverage to an insured and stated its defenses, the company has waived or is estopped from raising new defenses." *City of Warren, Mich. v. Int'l Ins. Co. of Hannover, Ltd.*, 524 F. App'x 254, 259 (6th Cir. 2013) (citing *Lee v. Evergreen Regency Coop. & Mgmt. Sys., Inc.,* 390 N.W.2d 183, 185 (Mich.Ct.App.1986)). "Because waiver is an intentional relinquishment of a known right, an insurer will be held to waive a coverage defense if the insurer is aware of the facts supporting the defense." *Bristol W. Ins. Co. v. Whitt*, 406 F. Supp. 2d 771, 781 (W.D. Mich. 2005) (citing *S. Macomb Disposal Auth. v. Mich. Mun. Risk Mgmt. Auth.,* 526 N.W.2d 3, 4 (Mich.Ct.App.1994)); *LeDuff v. Auto Club Ins. Ass'n,* 536 N.W.2d 812, 815 (Mich.Ct.App.1995).

Defendant's letter denied Plaintiff coverage for two reasons, neither of which has anything to do with the language of Insuring Agreement D or mentions the word "original." Defendant never addressed in its denial letter whether a faxed instruction is covered by the Bond. Rather, Defendant's letter believed that Plaintiff's loss would have been covered under the Bond and specified two reasons for denial: the Electronic/Computer Systems Rider and the "loan loss" exclusion in Section 2(e).

Defendant as the insurer that drafted the policy is familiar with all of the nuances of its policy. It not only drafted the policy, but enforces it on a frequent basis. It was in possession of the policy and had the opportunity to fully review all of its terms prior to deciding whether to pay

or deny the claim. Defendant read the terms of the policy and decided that it had two bases upon which to deny the claim: 1) the Electronic/Computer Systems Rider and 2) the "loan loss" exclusion. From the denial letter to all its pleadings in district court, Defendant relied on these two arguments as to why Plaintiff's claim was not covered by the Bond. It was only in its motion for reconsideration after the district court denied its motion for summary judgment and granted Plaintiff's motion for summary judgment that Defendant introduced this new argument that the language contained in Agreement D excludes Plaintiff's claim. Since Defendant used its motion for reconsideration as an opportunity to re-argue the case and introduce a new argument that could have been presented earlier, the district court did not abuse its discretion in denying Defendant's motion for reconsideration.

## II.     The "Loan Loss" exclusion in the Bond

Defendant argues that section 2(e) of the Bond precludes coverage for Plaintiff's loss. Section 2(e) reads that "[t]his bond does not cover:

> (e) loss resulting directly or indirectly from the complete or partial nonpayment of, or default upon any Loan or transaction involving the Insured as a lender or borrower, or extension of credit, including the purchase, discounting or other acquisition of false or genuine accounts, invoices, notes, agreements of Evidences of Debt, whether such Loan transaction or extension was procured in good faith or through trick, artifice, fraud, or false pretenses, except when covered under Insuring Agreements (A), (E) or (G)."

Section 1(m) also reads that "[a]s used in this bond:

> (m) Loan means all extensions of credit by the Insured and all transactions creating a creditor relationship in favor of the Insured and all transactions by which the Insured assumes an existing creditor relationship."

Defendant contends that the loss Plaintiff suffered as a result of the fraudulent wire transfer request was from the extension of credit and is therefore excluded from coverage. However, the clear meaning of section 2(e) is that Defendant will not cover a loss resulting from a customer default on a loan or extension of credit made by Plaintiff. The loss in this case did not result

from the nonpayment of a loan. It was a loss as a result of a fraudulent wire transfer request by someone other than the true customer.

The purpose of the "loan loss" exclusion is to exclude from coverage credit risks that are within the expertise of the financial institution, while still protecting the financial institution from insurable risks. In other words, insurance companies use these provisions to exclude losses that are the result of bad loans that a financial institution should have known better than to enter into. *Hudson United Bank v. Progressive Cas. Ins. Co.*, 284 F. Supp. 2d 249, 252 (E.D. Pa. 2003). The rationale for financial institutions relying upon their own business judgment and risk tolerance makes sense. The financial institution should bear the loss associated with credit decisions it makes from which it hopes to profit.

*People's State Bank v. American Cas. Co. of Reading, Pa*., 818 F. Supp 1073 (E.D. Mich. 1993), involved a dishonest bank employee who filled out loan applications in the name of unsuspecting or unknown persons, signed promissory notes using the false applicant's name, and then directed the proceeds from the loans either to himself, the accounts of others or to make payments on fraudulent loans he had previously created. The bank made a claim under the bond, and the insurance company denied the claim on the basis of the "loan loss" exclusion, which was identical to the loan loss exclusion in this case.

The district court stated that the insurance company's argument for exclusion under the "loan loss" provision was "convoluted" because "[a] simple reading of the language of exclusion (e) makes it abundantly clear that the losses incurred by [the bank] do not fall under this term of the fidelity bond. Exclusion (e) applies to losses that arise from the 'complete or partial non-payment of, or default upon, any Loan or transaction involving the Insured as a lender or borrower, or extension of credit . . .'" *Id*. at 1077.

The court went on to find that the "transactions [did] not constitute loans under the definitions set forth in the bond." *Id*. After reciting the bond's definition of the term "loan," which, exactly like the Bond at issue here, was defined as all "extensions of credit," and the term "letter of credit," which, exactly like the Bond at issue here, was defined as "an engagement in writing by a bank or other person made at the request of a customer," the court held that because the loans were not made at the request of a customer, they did not constitute loans as defined by the fidelity bond and were not excepted from coverage. *Id*. at 1077–1078 (emphasis in original).

In addition, the court held that even if the dishonest transactions were found to constitute loans, the bank's losses nonetheless fell outside the purview of the "loan loss" provision because they did not result from "the complete or partial non-payment of, or default upon, any Loan," as the "loan loss" provision required. *Id*. at 1078. Therefore, the court denied the insurance company's motion for summary judgment based upon the "loan loss" exclusion.

Similarly, the "loan loss" exclusion is inapplicable here because the risk in this case had nothing to do with the Bank making a poor credit decision, improperly valuing collateral or the risk of utilizing poor credit policies or practices. Rather, the risk at issue in this case was the risk of forgery. Plaintiff purchased and paid premiums for insurance that covered, among other things, losses resulting from forgery. The plain language of the Bond covers forgeries. (R. 12-2, Bond, at 198.) Plaintiff understood that it was not insured for losses resulting from defaulted loans or other extensions of credit when a customer failed to repay monies owed, even if the customer engaged in fraudulent conduct.

In conclusion, Plaintiff did not lose $196,000 as a result of a giving out a loan or extension of credit. Plaintiff lost $196,000 because an individual forged the signature of its true customer and thereby managed to get $196,000 transferred from the true customer's HELOC to

an account in South Korea which resulted in the money being stolen. The plain language of the Bond covers this type of loss and the exclusion in section 2(e) clearly does not apply.

**CONCLUSION**

For the foregoing reasons, we **AFFIRM** the district court's decision to grant Plaintiff's motion for summary judgment and to deny Defendant's motion for summary judgment and motion for reconsideration.