■ KEYBANK NATIONAL ASSOCIATION et al., Appellants, v NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA, Respondent. [3 NYS3d 324]—

Order, Supreme Court, New York County (Jeffrey K. Oing, J.), entered on or about July 10, 2013, which denied plaintiffs' motion for summary judgment, unanimously affirmed, without costs.

Plaintiff bank loaned a developer more than $20 million for a condominium project. The loan was secured by mortgage liens on the condominium units and two New Jersey properties, and personal guarantees.

As individual condominium units were sold, a percentage of the proceeds was to be used to pay down the loan and release the lien on those units. Plaintiff's employee permitted the liens on 20 units to be released without the paydown amounts, diverting more than $5 million to the developer, which the employee concealed by falsely representing to plaintiff that the units had not closed. Plaintiff's "Suspicious Activity Report" states that the employee's actions were in contravention of its normal practices and the loan documents, and that plaintiff "presently ha[d] no evidence of financial benefit or gain to [the employee] by reason of his actions."

Plaintiff now seeks to recover its losses under the fidelity bond issued by defendant, which provided coverage for: "(A)

Loss resulting directly from dishonest or fraudulent acts committed by an Employee acting alone or in collusion with others. Such dishonest or fraudulent acts must be committed by the Employee with the *manifest intent*: (a) to cause the Insured to sustain such loss; or (b) to obtain financial benefit for the Employee or another person or entity. Notwithstanding the foregoing, however, it is agreed that *with regards to Loans* and/or Trading this bond covers only loss resulting directly from dishonest or fraudulent acts committed by an Employee with the intent to cause the Insured to sustain such loss and which results in a financial benefit for the Employee" (emphasis added).

Supreme Court erred when it found that issues of fact exist as to whether the release of the liens on the 20 units, without receipt of the paydown amount, fell within the policy's more stringent "with regards to Loans" standard, which requires both an intent to cause plaintiff harm and a financial benefit for the offending employee. The bond defines a loan as: "all extensions of credit by the Insured and all transactions creating a creditor relationship in favor of the Insured and all transactions by which the Insured assumes an existing creditor relationship." The losses that were caused by the employee's conduct do not fall within the scope of this definition.

The purpose of the more stringent standard for losses with regards to loans "is to exclude from coverage credit risks that are within the expertise of the financial institution, while still protecting the financial institution from insurable risks. In other words, insurance companies use these provisions to exclude losses that are the result of bad loans that a financial institution should have known better than to enter into" (*Bank of Ann Arbor v Everest Natl. Ins. Co.*, 563 Fed Appx 473, 478 [6th Cir 2014]; *Hudson United Bank v Progressive Cas. Ins. Co.*, 152 F Supp 2d 751, 754 [ED Pa 2001] [loan loss exclusion in financial institution bond did not apply where bank's damages were allegedly caused by concealment of data, not the default itself]; *see also* 11 Steven Plitt et al., Couch on Insurance 3d § 167:54 [2014]). Here, the risk had nothing to do with plaintiff's making a poor credit decision. Rather, the risk related to the employee's alleged misconduct in failing to follow bank procedures and diverting funds to the developer. Although this may have prevented the reduction of the loan balance, it did not create a new extension of credit, i.e. it was not a new loan.

However, summary judgment must be denied because material issues of fact exist as to whether the employee had the "manifest intent" to cause plaintiff to sustain a loss or to obtain a financial benefit for himself or the developer.

Manifest intent involves a continuum of conduct, ranging from embezzlement, where the employee necessarily intends to cause the employer the loss, to the other end of the continuum, which does not trigger fidelity coverage, where "the employee's dishonesty at the expense of a third party is intended to benefit the employer, since the employee's gain results from the employer's gain" (*Aetna Cas. & Sur. Co. v Kidder, Peabody & Co.*, 246 AD2d 202, 209 [1st Dept 1998], *lv denied* 93 NY2d 805 [1999]).

Manifest intent to injure an employer exists as a matter of law where an employee acts with substantial certainty that his employer will ultimately bear the loss occasioned by his dishonesty and misconduct (*National Bank of Pakistan v Basham*, 142 AD2d 532, 534 [1st Dept 1988]), *affd* 73 NY2d 1000 [1989]). Defendant argues that this standard is not met because its submissions demonstrate that the employee's intent was to allow the borrower to retain funds needed to complete the construction of the project in order to prevent the bank from sustaining a loss. Defendant contends that this is corroborated by the findings of a New Jersey court in related proceedings to which plaintiff was a party that the employee's "sole motivation was to further the interest of [the lender] to get paid in full with interest on the loan," and that plaintiffs are collaterally estopped from arguing that the employee's intent was to harm the bank or to benefit the borrower.

Although a New Jersey court found that the employee acted solely to further his employer's interest in getting the loans paid in full, which constituted an impairment of collateral with respect to the New Jersey mortgages warranting the extinguishment of plaintiff's rights to foreclose, that finding was not made within the context of an analysis of the term manifest intent with respect to a fidelity bond, and is not conclusive. An issue of fact remains as to whether the employee's diversion of checks to the developer that should have been deposited with his employer manifests an intent to harm his employer within the meaning of the fidelity bond.

Even if the employee did not intend to injure his employer, a second and alternate showing of manifest intent under the bond may be demonstrated if the diversion of checks to the project development company manifested an intention to obtain a financial benefit for another person or entity. Conflicting expert opinions as to whether the cash flow from the free releases was used to pay construction costs, in addition to the fact that no forensic accounting has been completed in this case, precludes summary judgment as to this issue.

For this reason, summary judgment was also properly denied as to whether plaintiffs actually suffered a direct loss as a result of the employee's allegedly dishonest actions. In addition, the record is not conclusive as to whether the mortgages that were the subject of the New Jersey action secured only one $3 million obligation, as opposed to the $6 million calculated by plaintiffs.

Issues of fact as to the amount of direct loss preclude the determination of attorneys' fees at this time. Concur—Mazzarelli, J.P., Andrias, Manzanet-Daniels, Feinman and Gische, JJ.