NOT RECOMMENDED FOR PUBLICATION
File Name: 14a0474n.06

No. 13-1921

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
Jul 01, 2014
DEBORAH S. HUNT, Clerk

MILTON STANCIEL,  )
)
    Plaintiff-Appellant,  )
)
        v.  )
)
PATRICK R. DONAHOE, Postmaster General,  )
United States,  )
)
    Defendant-Appellee.  )
)

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE EASTERN
DISTRICT OF MICHIGAN

BEFORE: GRIFFIN and DONALD, Circuit Judges; and GRAHAM, District Judge.[*]

GRIFFIN, Circuit Judge.

Plaintiff Milton Stanciel sued his former employer, the United States Postal Service, alleging that it did not accommodate his mental disability and terminated him solely because of that disability, all in violation of the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–797. The district court granted summary judgment to defendant on both claims. We affirm.

I.

Plaintiff suffers from a mental disability. He was first diagnosed with a learning disability when he was 12 years old, as a 6th grade student in the Detroit Public School system. Plaintiff's disability makes it difficult for him to understand directions he is given, and he finds that it greatly aides his ability to learn or understand when people repeat instructions to him or

---

[*]The Honorable James L. Graham, Senior United States District Judge for the Southern District of Ohio, sitting by designation.

speak to him slowly.  Notwithstanding this disability, plaintiff graduated from high school with the assistance of special education classes.  He then attended Wayne Community College for some time, and later the Detroit Business Institute.  Plaintiff has an IQ of 69.

Plaintiff began working for defendant as a bulk mail handler in January 1991 and was a member of the National Postal Mail Handlers Union, Local 307.  Because of his mental impairment, defendant hired plaintiff through a special, non-competitive hiring process.  This process excused plaintiff from taking the standard service entrance exams to determine literacy or ability to serve as an employee.  Included among the paperwork completed during the hiring process is a certification of disability form which lists plaintiff as having disability code 90, defined as "mental retardation."  All agree that plaintiff excelled at his job as a "sack sorter," keying in zip codes of mail as it passed him on a conveyor belt.

However, plaintiff had serious attendance problems.  Plaintiff received thirteen multi-day suspensions for attendance infractions between July 1994 and June 2009.  He also received five notices of removal during his tenure that ultimately were modified to provide him with another chance to retain his employment.  Admittedly conscious of his attendance issues, plaintiff utilized various strategies to avoid infractions.  For example, when he knew he would be late, he would call and ask his supervisor, Donna Bright, to punch him in before he arrived.  Bright complied initially but later refused after plaintiff made the request "too many times."  Plaintiff also took his timecard home with him overnight so he could clock in at the first time clock he encountered when entering the facility, rather than at the clock closest to his work station, where his timecard normally would be kept.  Further, plaintiff obtained Bright's permission to use his annual leave to cover the time he missed when tardy.  And, despite the fact that defendant

disciplined plaintiff for being absent without leave on many occasions, plaintiff was aware of the form he needed to complete to comply with the general procedure for requesting time off.

In 2008, plaintiff developed an alcohol abuse problem. He admitted that he had been drinking daily, even before work and on his lunch breaks, and that he had also been using marijuana and cocaine. He also admitted that his drinking problem caused him to be late.

In September 2009, plaintiff participated in another pre-disciplinary interview for attendance problems. Under the attendance policy in effect at plaintiff's location, if an employee has more than three attendance infractions over a ninety-day period, the computer notifies the supervisor to conduct an attendance review. Plaintiff does not dispute that he incurred four violations during the relevant time period: two tardies and two absences. During the meeting, plaintiff cited "car problems" and "transportation" as the reason for his absences. Bright did not offer plaintiff an accommodation for his disability at this time because she did not know one was needed, nor was she ever told that defendant had previously certified that plaintiff was mentally disabled. She was also unaware that plaintiff had a drinking problem, and plaintiff did not inform her of his problem during the interview.

After the investigation was complete, on September 22, 2009, Betty Mitchell, acting Supervisor Distribution Operations, issued a letter of removal notifying plaintiff of his termination effective October 30, 2009. Plaintiff subsequently checked himself into rehabilitation for alcoholism and drug abuse, and on October 8, 2009, he returned to work and worked until his removal date.

In May 2010, as a result of a successful union grievance process related to his termination, plaintiff signed a "redress mediation settlement agreement" with defendant. Under that agreement, plaintiff could have returned to work if he, among other things, passed a drug

test. However, plaintiff later decided that the drug test requirement was unfair, and he rejected the settlement. Plaintiff's grievance was ultimately denied on December 15, 2010, when an arbitrator found that defendant had "just cause" to terminate plaintiff's employment.

In April 2011, plaintiff filed the instant suit against defendant, raising a variety of claims under state and federal law. By 2013, as a result of plaintiff's subsequent abandonment of certain claims and the district court's ruling on defendant's motion to dismiss,[1] only two claims remained: (1) disability discrimination under the Rehabilitation Act—based on the above-described mental disability and alcoholism; and (2) gender discrimination under Title VII of the Civil Rights Act. Defendant filed a motion for summary judgment on both claims, which the district court granted. Plaintiff timely appealed, challenging only the ruling related to his disability discrimination claim based on his mental disability.

## II.

## A.

We review de novo the district court's grant of summary judgment. *Geiger v. Tower Auto.*, 579 F.3d 614, 620 (6th Cir. 2009). Summary judgment is proper when, viewing the evidence in the light most favorable to the nonmoving party, there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Burley v. Gagacki*, 729 F.3d 610, 618 (6th Cir. 2013).

---

[1]Plaintiff does not challenge this ruling on appeal.

B.

Plaintiff first argues that he has created a genuine issue of material fact on whether defendant terminated his employment "solely because of" his disability in violation of the Rehabilitation Act. We disagree.

The Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity . . . conducted by any Executive Agency or by the United States Postal Service." 29 U.S.C. § 794(a). To prevail on a claim of discriminatory discharge under the Act, a plaintiff must "prove that he was fired *solely* by reason of his disability." *Jones v. Potter*, 488 F.3d 397, 409 (6th Cir. 2007) (internal quotation marks, ellipses, and citation omitted); *see also Lewis v. Humboldt Acquisition Corp., Inc.*, 681 F.3d 312, 317 (6th Cir. 2012) (en banc) ("The sole-cause standard . . . is a creature of the Rehabilitation Act[.]"). An employer makes a termination decision "solely" because of its employee's disability when "the employer has no reason left to rely on to justify its decision other than the employee's disability[.]" *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1183 n.9 (6th Cir. 1996), abrogated on other grounds by *Lewis*, 681 F.3d at 313–14.

In assessing Rehabilitation Act discrimination claims based on circumstantial evidence— as is the case here—we apply the three-step *McDonnell Douglas* framework. *Gribcheck v. Runyon*, 245 F.3d 547, 550 (6th Cir. 2001). First, a plaintiff must set forth evidence from which a jury could conclude a prima facie case of discrimination has been established. *Macy v. Hopkins Cnty. School Bd. of Educ.*, 484 F.3d 357, 364 (6th Cir. 2007). Then, the burden shifts to the employer to articulate some "legitimate, nondiscriminatory reason" for its actions. *Id.*

Finally, if the defendant meets that burden, "the plaintiff must identify evidence from which a reasonable jury could conclude that the proffered reason is actually a pretext for unlawful discrimination." *Id.*

To establish a prima facie case of discrimination under the Rehabilitation Act, a plaintiff must show that (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse employment decision; (4) the employer knew or had reason to know of his disability; and (5) either the position remained open; he was replaced by a non-disabled person; or similarly-situated non-disabled employees were treated more favorably. *DiCarlo v. Potter*, 358 F.3d 408, 418 (6th Cir. 2004).

In this case, the district court assumed that plaintiff has established a prima facie case. Defendant does not challenge this determination on appeal. Accordingly, we turn to pretext.

Defendant has articulated a legitimate, non-discriminatory reason for terminating plaintiff's employment—his numerous attendance violations. Plaintiff may demonstrate that defendant's rationale is a pretext designed to mask intentional disability discrimination with proof that the attendance rationale had either (1) no basis in fact; (2) did not actually motivate defendant's termination decision; or (3) was insufficient to motivate termination. *Jones*, 488 F.3d at 406. On this record, plaintiff cannot make that showing.

Plaintiff does not dispute that he has a history of attendance problems or that defendant's attendance policy states that "Failure to be regular in attendance may result in disciplinary action, including removal from the Postal Service." Plaintiff also does not dispute that defendant proposed to terminate plaintiff at least five times before for similar attendance violations, and plaintiff had only retained his job through union grievances and two so-called "Last Chance

Agreements." Thus, no reasonable jury could find that defendant's attendance rationale has no basis in fact or was insufficient to motivate defendant's decision to end plaintiff's employment.

Likewise, no reasonable jury could find that defendant's attendance rationale did not actually motivate defendant's decision. Plaintiff argues that he has established pretext because (1) he has offered affidavits from two co-workers showing that Bright was dishonest when asked during her deposition if she knew of his disability; (2) discipline for attendance violations is left to the "arbitrary" discretion of his supervisors; and (3) he was the only employee that was asked to take a drug test in addition to the regular medical clearance exam in order to be reinstated in connection with his final "Last Chance" agreement. This evidence does not allow a reasonable jury to conclude that defendant's attendance rationale did not actually motivate its decision to terminate plaintiff's employment.

First, even if we agree with plaintiff that his co-workers' affidavits create a fact question on whether Bright was lying when she said that she did not know that he was disabled, a determination in plaintiff's favor would not support an inference that he was fired "solely by reason of" his disability because he admits to the attendance violations and because the Rehabilitation Act does not prohibit an employer from discharging someone for egregious misconduct, even if the misconduct was "causally related to" a disability. *Maddox v. Univ. of Tenn.*, 62 F.3d 843, 847 (6th Cir. 1995), abrogated on other grounds by *Lewis*, 681 F.3d at 313–14; *see also LaPorta v. Wal-Mart Stores, Inc.*, 163 F. Supp. 2d 758, 769 (W.D. Mich. 2001) ("*Maddox* and its progeny . . . stand for the proposition that an employer may lawfully discharge an employee for egregious misconduct, even when the misconduct is allegedly induced by a disability.").

Second, the record does not support plaintiff's argument that his supervisors arbitrarily issued discipline for his numerous attendance violations. Bright testified that when the computer notifies her that the employee has had three attendance incidents in the prior ninety days, she considers the reasons for the infractions and she makes a decision as to whether to start the disciplinary process or to continue to watch the person's attendance. Further, plaintiff does not dispute that he has a long history of attendance violations and that defendant had previously issued a series of progressive disciplinary actions, including multi-day suspensions and repeat proposals of termination. No reasonable jury could find that defendant's termination of plaintiff's employment was an arbitrary disciplinary action designed to conceal intentional disability discrimination.

Third, defendant's requirement that plaintiff submit to a drug test as part of his final "Last Chance" agreement does not show pretext. Plaintiff fails to come forward with any evidence that any other employee who had a "Last Chance" agreement based on attendance problems had admitted abusing illegal drugs but was not required to take a drug test as part of a reinstatement package. In other words, plaintiff has no evidence that he was treated any differently than similarly-situated non-disabled employees.

In sum, although plaintiff has established a prima facie case of disability discrimination, he has offered no evidence from which a reasonable jury could conclude that defendant's proffered rationale for its termination decision—numerous attendance violations—was pretextual.

C.

Next, plaintiff argues that he has created a genuine issue of material fact on whether defendant failed to accommodate his disability in violation of the Rehabilitation Act. Again, we disagree.

To establish a prima facie case of failure to accommodate under the Rehabilitation Act, a plaintiff must show that (1) he has a disability; (2) he was qualified for the position; (3) the agency was aware of his disability; (4) an accommodation was needed, "i.e., a causal relationship existed between the disability and the request for accommodation;" and (5) the agency failed to provide the accommodation. *Gaines v. Runyon*, 107 F.3d 1171, 1175 (6th Cir. 1997). If the plaintiff establishes a prima facie case, "the burden shifts to the employer to demonstrate that the employee cannot reasonably be accommodated, because the accommodation would impose an undue hardship on the operation of its programs." *Id.* at 1175–76.

Plaintiff cannot establish the fourth element of his prima facie case because he never requested that defendant accommodate his disability. "It is well settled in cases brought under the Rehabilitation Act . . . that reasonable accommodation is not at issue if the plaintiff has never requested accommodations." *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1046 n.4 (6th Cir. 1998) (citing *Lue v. Moore*, 43 F.3d 1203, 1206 (8th Cir. 1994); *Wood v. President of Spring Hill College*, 978 F.2d 1214, 1222 (11th Cir. 1992)). The rule is justified by the sensible policy that the "employer is not required to speculate as to the extent of the employee's disability or the employee's need or desire for an accommodation." *Id.* at 1046–47.

In this case, plaintiff claims that he "arguably" requested an accommodation because he (1) asked supervisors for help with "policies and procedures" regarding certain attendance forms; (2) requested a "revised work schedule"; and (3) made a "blanket, permanent" request for

reasonable accommodations in his certification of disability form completed during the hiring process in 1991. This evidence does not show that plaintiff actually requested defendant to accommodate his disability.

First, the record does not demonstrate a causal relationship between plaintiff's disability and his request for help with "policies and procedures." Plaintiff's deposition testimony reveals that he understood the relevant policies and his work history shows that he was capable of reporting to work as scheduled. In other words, defendant did not need to accommodate plaintiff in order for him to understand or comply with the attendance policy and procedures at issue.

Second, although plaintiff requested a "revised work schedule," he admits that he never told defendant that he needed this accommodation because of his disability. Moreover, plaintiff explained that what he meant by a "revised work schedule" was being granted permission to use annual leave when he was late, even though it was not scheduled—a practice that his supervisors apparently allowed for some time. Under these circumstances, defendant would have no reason to know that plaintiff was requesting an accommodation under the Rehabilitation Act when he asked for a "revised work schedule." *See Enica v. Principi*, 544 F.3d 328, 338 (1st Cir. 2008) ("[T]he employee must prove that the request was sufficiently direct and specific so as to put the employer on notice of the need for an accommodation.").

Third, and similarly, nothing in plaintiff's certification of disability form shows that he made a "blanket, permanent" request that defendant grant him unidentified accommodations for unidentified aspects of the job throughout the duration of his employment. The document merely contains a certification from the Michigan Rehabilitation Services that a counselor has:

> reviewed the job requirements and the job site and certify that the above-named applicant for the cited position in Detroit, Michigan [ ] has a severe disability, code # 90(LD), and: a. Has the ability to perform the duties of the position; b. Is

> qualified to do the work without hazard to self or others; and c. Is physically and socially competent to maintain self in a work environment, either independently, or with continuing help as has been provided in after-work hours living.

In no way can this passage be reasonably construed as a perpetual request for an accommodation under the Rehabilitation Act.

Additionally, because we find that plaintiff did not request an accommodation, plaintiff alternatively argues that he should be excused from making such a request. Citing an unappealed district court opinion that applies out-of-circuit case law and interprets dicta from two of our unpublished opinions, plaintiff argues that the application of the general rule that a plaintiff must request an accommodation in order to establish a prima facie case is not warranted if: (1) the disability at issue is a mental disability that is obvious or otherwise known to the employer without notice from the employee; (2) the employer had reason to believe that the employee is experiencing work problems because of that disability; and (3) the nature of the disability impairs the employee's ability to request an accommodation. *See Moloney v. Home Depot U.S.A., Inc.*, No. 11-10924, 2012 WL 1957627, *14 (E.D. Mich. May 31, 2012). Assuming arguendo that this three-part conjunctive test is the law of the circuit—which it is not—plaintiff cannot meet the second element.

Plaintiff does not point to any evidence in the record that would lead a reasonable trier of fact to conclude that defendant should have known that he was not arriving on time or was absent without leave because of his disability. Although plaintiff was disabled throughout his entire tenure with defendant, he displayed an ability to meet the requirement for regular attendance in the first two years of his employment and for significant periods after that. Plaintiff also told defendant that there were a number of other reasons why his attendance suffered, from transportation issues to drug and alcohol abuse, but never mentioned his disability

as one of those reasons. Further, it is undisputed that, except for the circumstances surrounding his hiring, he never told his supervisors that he even had a mental disability. Consequently, this record does not create a genuine issue of material fact on whether defendant had a reason to know that this disability caused attendance issues.

In sum, because plaintiff made no request for an accommodation, and because he is not excused from making the request under the circumstances presented, there is no evidence from which a reasonable jury could find that defendant failed to accommodate plaintiff's disability.

III.

For the foregoing reasons, we affirm the judgment of the district court.