NOT RECOMMENDED FOR FULL-TEXT PUBLICATION

File Name: 16a0256n.06

Case No. 15-1620

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
May 11, 2016
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| TODD DEISTER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE EASTERN DISTRICT OF |
| AUTO CLUB INSURANCE | ) | MICHIGAN |
| ASSOCIATION, | ) | |
| | ) | **OPINION** |
| Defendant-Appellee. | ) | |
| | ) | |

BEFORE: SUHRHEINRICH, McKEAGUE, and DONALD, Circuit Judges.

BERNICE BOUIE DONALD, Circuit Judge. Todd Deister ("Deister") appeals the district court's order granting Defendant Auto Club Insurance Association's ("Auto Club") motion for summary judgment. Deister filed an employment discrimination suit against Auto Club under the Americans with Disabilities Act ("ADA"). The district court held that he failed to set forth sufficient evidence to survive summary judgment with respect to his disability discrimination and failure to accommodate claims, and that he was barred from bringing his retaliation claim because he failed to exhaust his administrative remedies.

For the reasons articulated below, we **AFFIRM**.

I.

On September 12, 2011, Deister began working for Auto Club as a claims adjuster. Prior to his employment at Auto Club, he worked as a property claims adjuster for more than twenty-five years. When not dispatched to a property claim location, Deister worked from home. His direct supervisor was Christopher Ruby ("Ruby").

On March 8, 2012, while on an assignment to adjust property claims for tornado damage in Kentucky, Deister began experiencing shakiness and poor concentration. After his work computer stopped functioning, he suffered a panic attack. Deister emailed Ruby stating,

> I am leaving for home tonight due to panic/stress attacks and to meet with my doctor tomorrow. I will have my files with Aht. Please advise if you need anything else before I leave.

(Page ID # 435.)

> Upon receiving Deister's message, Ruby replied,

> Todd, Sorry to hear that. Rob is going to come by to get the files. What about the losses you inspected did you write the estimates? Please checkout of the hotel you will not deploy back if able. Please let me know how you are. I hold (sic) everything is okay. Drive safe.

(Page ID # 435.)

Beginning March 9, 2012, Deister took an indefinite medical leave from work. On March 12, 2012, he faxed Auto Club Human Resources employee, Rosita Brockington ("Brockington") a "Disability Certificate" signed by Deister's physician, Dr. Baldwin, indicating that Deister suffered from an "acute stress reaction," and that his prognosis was "good." (Page ID # 748.) The "Disability Certificate" also stated that the first day Deister would be unable to work was March 9, 2012, and that he would be able to return to work on April 9, 2012.

In a letter dated March 23, 2012, Auto Club acknowledged receiving Deister's claim for disability leave of absence. The letter also explained some of Auto Club's policies and

procedures with regard to employees who take disability leave, such as an employee's employment status while on leave and how an employee's paid time off is impacted while on leave. Specifically the letter advised, "[y]ou may be replaced after 90 days of absence in a rolling 12 month period (unless otherwise protected by Family and Medical Leave.)" (Page ID # 159.) Moreover, Auto Club's employment policy guide stated that "failure to return to work when released by the disability administrator or as instructed by the company may result in termination." (Page ID # 169.)

The Hartford, which administered Auto Club's disability benefit plan, approved Deister's short-term disability benefits claim, in a letter dated April 16, 2012. According to that letter, Deister was to receive benefits from March 16, 2012 until May 31, 2012. A final extension allowed him to receive benefits through July 31, 2012.

On June 8, 2012, Ruby sent Deister a letter advising, in relevant part, that Auto Club "holds an employee position open for 90 consecutive calendar days of disability" and that in Deister's case, "more than 90 calendar days have elapsed and business conditions require that [Auto Club] fill the vacancy." (Page ID # 510.) On June 26, 2012, Ruby sent Deister another letter requesting "return of company-owned equipment." (Page ID # 174.) The letter concluded, "[p]lease contact me . . . by no later than noon on Friday, June 29, 2012. If you fail to contact me by this deadline, you will leave me no choice but to pursue recovery through other legal channels." *Id.*

On July 19, 2012, Deister's psychiatrist met with Deister and determined that he would be able to return to work on August 1, 2012. Deister called JoAnn Hines ("Hines"), an Auto Club Human Resources employee, on July 24, 2012, and informed her that he wanted to meet with her before his leave ended to discuss his options. Hines told him that she could not meet

until August 1, 2012. After this conversation, on July 31, 2012, Hines left Deister a voicemail advising that she could respond to questions about his leave, but that if he had questions regarding "the option for employment with a 90-day letter" then he would need to meet with Brockington. (Page ID # 504.)

Deister left Brockington a voicemail on July 31, 2012. She returned his call on August 1, 2012. While the contents of that conversation are disputed, there is no dispute that Brockington told Deister that he needed to review his "90 Day Letter," and that he would have to go back to his former position. (Page ID # 697–98.) Nor is there any dispute that Deister said he would not return to his former position under the same manager, Ruby. (Page ID # 697.) Deister states that he also requested Brockington to review his medical records and suggested the possibility of working under a different manager. (Page ID # 697.) Following their phone conversation, Brockington sent Deister a letter dated, August 6, 2012, stating, in relevant part, "[b]ecause you have chosen not to return to your former position, your employment will be terminated effective August 7, 2012." (Page ID # 173.)

On October 10, 2012, Deister filed a charge of disability discrimination against Auto Club with the Equal Employment Opportunity Commission ("EEOC"). The EEOC subsequently issued Deister a right to sue letter on February 27, 2013. Deister filed this suit on September 18, 2013, and on March 5, 2015, the district court granted Auto Club's motion for summary judgment. Deister's motion for reconsideration was also denied. This timely appeal followed.

## II.

We review a district court's grant of summary judgment *de novo*. *Rd. Sprinkler Fitters Local Union No. 669, U.A., AFL-CIO v. Dorn Sprinkler Co.*, 669 F.3d 790, 793 (6th Cir. 2012). Likewise, we also review a district court's denial of a motion for reconsideration *de novo*. *Bank*

*of Ann Arbor v. Everest Nat. Ins. Co.*, 563 F. App'x 473, 475 (6th Cir. 2014). When reviewing a district court's summary judgment decision, we draw all reasonable inferences in the light most favorable to the party opposing the motion. *Hanover Ins. Co. v. Am. Eng'g Co.*, 33 F.3d 727, 730 (6th Cir. 1994). "Summary judgment is appropriate when there is no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law." *Smith v. Wal-Mart Stores, Inc.*, 167 F.3d 286, 289 (6th Cir. 1999) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "A dispute is 'genuine' only if based on evidence upon which a reasonable jury could return a verdict in favor of the non-moving party," and a "factual dispute concerns a 'material' fact only if its resolution might affect the outcome of the suit under the governing substantive law." *Henderson v. Walled Lake Consol. Sch.*, 469 F.3d 479, 487 (6th Cir. 2006).

### III.

On appeal, Deister argues that the district erred in (1) granting summary judgment with respect to his disability discrimination and failure to accommodate claims, and (2) in deciding that he was foreclosed from litigating his disability retaliation claim because he did not exhaust his administrative remedies. For the reasons explained below, we disagree.

### A.

The ADA prohibits employers from discriminating "against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge or employees, employee compensation, job training, and other terms, conditions and privileges of employment." 42 U.S.C. § 12112(a). In cases like the one before us, where no direct evidence of discrimination is in the record, we utilize the *McDonnell–Douglass* burden-shifting framework to determine whether a viable discrimination claim exists. *Anderson v. City of Blue*

*Ash*, 798 F.3d 338, 356 (6th Cir. 2015). Under that framework, a plaintiff must first establish a prima facie case of discrimination, showing that: (1) he is disabled; (2) he was otherwise qualified for the position, with or without reasonable accommodation; (3) he suffered an adverse action; (4) the employer knew or had reason to know of his disability; and (5) he was replaced or the job remained open. *Yarberry v. Gregg Appliances, Inc.*, 625 F. App'x 729, 735 (6th Cir. 2015). If a prima facie case is established, the burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for taking the adverse action. *Id.* Once the defendant overcomes that hurdle, the plaintiff must present evidence that would allow a jury to find that the defendant's explanation is a pretext for discrimination. *Id.* In doing so, the plaintiff must show that his disability was a but-for cause of the adverse decision. *Lewis v. Humboldt Acquisition Corp.*, 681 F.3d 312, 321 (6th Cir. 2012) (en banc).

The district court found that Deister satisfied his burden of establishing a prima facie case, and also determined that Auto Club proffered a nondiscriminatory reason for terminating Deister—he "refus[ed] to return to his position after the expiration of his short term disability leave." (Page ID # 1283.)[1] In making that determination the district court relied on the following undisputed facts: (1) Deister provided no evidence to extend his leave;

---

[1] In accepting that Deister made out a prima facie case, the district court held he had adequately established that he had a disability. Yet, at the time of the complained-of adverse employment action, the August 7, 2012 termination, Deister had been cleared for return to work without restriction by his treating physician, T.L. Ittiara, M.D. There is no evidence Deister was then still suffering from the acute stress reaction he experienced on March 8, 2012. The district court nevertheless construed the record most generously in Deister's favor and held that a reasonable finder of fact could find that Deister had an "episodic disability." In support, the district court cited two sources: (1) Dr. Ittiara's May 8, 2012 intake diagnosis of "Major Depression–recurrent, Anxiety Disorder;" and (2) Beair v. Summit Polymers, 2013 WL 4099196 at *3 (E.D. Ky., Aug. 13, 2013) (finding diagnosis of major depression disorder and PTSD sufficient to meet low threshold of qualifying disability).

Suffice it to say we are not persuaded. A disability is hardly made out by the mere fact that Deister's presenting condition was diagnosed in May 2012 as "major depression–recurrent," without evidence that earlier manifestations of the condition had been disabling, and without evidence that Deister's condition resulted in substantial limitation of his major life activities in August, when he was terminated. Yet, our reticence regarding the adequacy of Deister's prima facie case showing is of little consequence as we ultimately agree that summary judgment was properly awarded to Auto Club on other grounds.

(2) Brockington told Deister that upon the expiration of his short term disability leave he must return to his former position, as it had not been filled; and (3) Deister told Brockington that he would not return to his previous position under his former manager. (Page ID # 20.) However, the district court decided that Deister failed to meet his burden of showing that Auto Club's proffered reason for terminating him was a pretext. We find no error with the district court's reasoning or ultimate conclusion that Deister did not meet his burden of proving that Auto Club's proffered reason for terminating him was a pretext for discrimination.

On appeal, Deister takes issue with the district court's decision that he did not meet his burden of establishing that Auto Club's decision to discharge him was, in fact, a pretext. Deister's arguments, however, are meritless and do nothing to demonstrate that Auto Club's discharge decision was not legitimate. A plaintiff can establish pretext by showing, (1) that the defendant's proffered reason had no basis in fact, (2) that the proffered reason did not actually motivate the adverse employment decision, or (3) that the proffered reason was insufficient to motivate the adverse employment decision. *Chattman v. Toho Tenax Am., Inc.*, 686 F.3d 339, 349 (6th Cir. 2012). The first category implicates evidence that the proffered basis never occurred; the second category requires a plaintiff to admit the factual basis underlying the proffered reason and also admit that the reason could motivate the adverse action, but prove in reality it did not; the third category is a direct attack on the credibility on the employer's proffered motivation and may consist of evidence that employees outside the protected class were not disciplined despite the fact that they engaged in substantially identical conduct as the plaintiff. *Id.* (citing *Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994) (overruled on other grounds)). Deister's basis for arguing that Auto Club's discharge decision was a pretext must fit into one of the above-defined categories.

While Deister's appellate brief sets forth arguments that are difficult to discern, the comprehensible argument it does provide fails to sufficiently demonstrate that Auto Club's reason for discharging him was a pretext. It appears that he contends that Brockington and Hines were coconspirators in a ploy to discharge him by intentionally delaying his meeting until August 1, 2012, the same day his leave expired. His argument fails for three reasons. First, it does not fit into one of the previously articulated alternatives to prove a pretext, because, as stated above, Deister told Brockington that he would not return to work at Auto Club if it meant that he had to work in his previous position. *See id.* Second, proof of the conspiracy is not in the record, thus we cannot assume that one existed. *See Arendale v. City of Memphis,* 519 F.3d 587, 601 (6th Cir. 2008) ("conclusory statements are not sufficient to survive any motion for summary judgment"). Third, assuming, arguendo, that Brockington and Hines conspired to move his meeting to the same day his leave expired, that fact does nothing to prove pretext because, as stated above, Deister made it clear in no uncertain terms that he would not return to work if it entailed working in his previous position. His insistence provided Auto Club with a nondiscriminatory reason to discharge him. Accordingly, we agree with the district court's decision that Deister did not establish that Auto Club's proffered reason for terminating his employment was a pretext.

B.

Under the ADA, employers must make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee, unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the [employer's] business." 42 U.S.C. § 12112(b)(5)(A). In order to establish a prima facie failure to accommodate claim under the ADA, Deister was

required to show that: (1) he was disabled within the meaning of the Act; (2) he was otherwise qualified for the position, with or without reasonable accommodation; (3) Auto Club knew or had reason to know about his disability; (4) he requested an accommodation; and (5) Auto Club failed to provide the necessary accommodation. *Johnson v. Cleveland City Sch. Dist.,* 443 F. App'x 974, 982–83 (6th Cir. 2011).

Like Deister's disability discrimination claim, we also analyze failure to accommodate claims based on circumstantial evidence using the *McDonnell–Douglass* burden-shifting framework. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 869 (6th Cir. 2007). Under that framework, first, Deister bears the initial burden of establishing that he is disabled. Second, Deister must prove that he was "otherwise qualified" for the position despite his disability. Third, the burden is transferred to Auto Club to show that the challenged job criterion is essential, or that the proposed accommodation will impose an undue hardship upon Auto Club. *Id.*

The district court determined that Deister failed to satisfy his burden to make a prima facie case because there was no evidence to prove that he requested an accommodation. Deister contends that he has provided evidence that he did make a satisfactory request for an accommodation. Specifically, Deister points to his sworn declaration, in which he alleged that, during a telephone conversation with Brockington on August 1, 2012, he requested an accommodation for his disability. In his declaration, Deister alleges that he told Brockington, "[y]ou need to review my medical records," and that he "wanted a meeting to discuss [his] options regarding [his] condition and employment." (Page ID. # 430.) He also alleged that after Brockington did not respond he "began offering suggestions hoping she would respond in some

way" and that he also requested "another adjusting position with a different manager . . . possibly even a different position. . ." (Page ID # 431.)

We disagree, and hold that Deister's sworn averments in his declaration fall short of satisfying his burden to show he requested an accommodation under the ADA. As we have previously observed "[o]ur case law establishes no bright-line test for when the form of an employee's request is sufficiently clear to constitute a request for an accommodation." *Judge v. Landscape Forms, Inc.,* 592 F. App'x 403, 407 (6th Cir. 2014). Although a plaintiff need not use the word "accommodate" or "disability," at a minimum he must "make it clear from the context that [the request] is being made in order to conform with existing medical restrictions." *Leeds v. Potter*, 249 F. App'x 442, 449 (6th Cir. 2007) (citing *Smith v. Henderson,* 376 F.3d 529, 535 (6th Cir.2004) (holding that a plaintiff stating that a job was "kicking his ass" is not sufficient to request an accommodation)); *see also Stanciel v. Donahoe*, 570 F. App'x 578, 583 (6th Cir. 2014) (reasoning that requesting a "revised work schedule" without letting the employer know he needed the accommodation because of his disability provides the employer with no reason to know that the employee is requesting an accommodation for his disability).

Deister's blanket requests for Brockington to review his medical records, for a meeting to discuss employment conditions, or to be placed in a new position all are insufficient to amount to an accommodation request under the ADA. As explained above, in requesting an accommodation, we require plaintiffs not only to request to be accommodated, but to also provide their employers with a sufficient basis to understand that the request is being made because of their disability. *See Stanciel*, 570 F. App'x at 583. Deister's request for Brockington to review his medical records and his request for a meeting to discuss his employment conditions are not requests to be accommodated. Moreover, with respect to his request to be placed in a

new position, Deister failed to let Brockington know that he was requesting a new position because of his disability.[2] Accordingly, we agree with the district court and hold that insufficient evidence exists in the record to show that Deister requested an accommodation under the ADA.

C.

"As a general rule, a Title VII plaintiff cannot bring claims in a lawsuit that were not included in his EEOC charge." *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010) (finding that a plaintiff's EEOC form fails to bring a retaliation charge when the box entitled "retaliation" is not checked and the narrative does not allege facts from which one could conclude that he or she intends to bring a retaliation claim;) *see also Dixon v. Ashcroft*, 392 F.3d 212, 217 (6th Cir. 2004) (reasoning that the determinative inquiry is whether a plaintiff alleged specific facts in his EEOC complaint to put the EEOC on notice of his retaliation claim). "This rule serves the dual purpose of giving the employer information concerning the conduct about which the employee complains, as well as affording the EEOC and the employer an opportunity to settle the dispute through conference, conciliation, and persuasion." *Younis*, 610 F.3d at 361.

In this case, Deister failed to check the box in his EEOC form entitled "retaliation." Nor does the narrative section include facts that would suggest that he intended to bring an ADA retaliation claim. (*See* Page ID # 176.) Therefore, we agree with the district court's decision that Deister failed to exhaust his administrative remedies as to his retaliation claim because his EEOC form did not include a retaliation charge.

In his appellate brief, Deister appears to contend that the district court erred because *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2519 (2013), overruled our court's

---

[2] Even if the record were generously construed as evidencing Deister's communication of a request to be assigned to a manager other than Ruby, the result would be the same. As the district court recognized, citing *Burdett-Foster v. Blue Cross & Blue Shield of Michigan*, 574 F. App'x 672, 680 (6th Cir. 2014), an employer is not obliged to honor, as a "reasonable accommodation," an employee's request for assignment to a different supervisor.

precedent and announced a new rule in which a plaintiff preserves a retaliation claim by simply checking the box entitled "disability" on the EEOC form. However, not only does *Nassar* fail to promulgate such a rule, it does not even discuss the exhaustion of administrative remedies issue presented by this case. Therefore, we need not address it further.

IV.

For the foregoing reasons, we **AFFIRM** the judgment of the district court.