**Mary Ellen WEDDING,**
**Plaintiff–Appellee,**

v.

**The UNIVERSITY OF TOLEDO,**
**Defendant–Appellant.**

**No. 95–3299.**

United States Court of Appeals,
Sixth Circuit.

Argued June 11, 1996.

Decided July 18, 1996.

Bruce Comly French (argued and briefed), Lima, OH, for Plaintiff-Appellee.

Susan B. Nelson (argued and briefed), Spengler, Nathanson, Heyman, McCarthy & Durfee, Toledo, OH, Barbara E. Machin (argued), University of Toledo General Counsel, Toledo, OH, for Defendant-Appellant.

Joseph J. Allotta (briefed), Richard P. James, Allotta & Farley, Toledo, OH, for Amicus Curiae American Ass'n of University Professors, University of Toledo Chapter.

Before: MERRITT, Chief Judge; BROWN and SUHRHEINRICH, Circuit Judges.

BAILEY BROWN, Circuit Judge.

Wedding, a tenured professor at the University of Toledo ("the University"), filed this sex discrimination action against her employer, alleging violations of (1) Title VII of the Civil Rights Act of 1964, (2) Title IX of the Education Amendments of 1972, and (3) the Equal Pay Act of 1963. She also included state statutory discrimination claims, and state common law claims of deceit and intentional infliction of emotional distress.

Prior to filing this action, however, Wedding had lodged an internal grievance against the University, based on the same conduct, pursuant to the collective bargaining agreement ("CBA") negotiated between the University and a professors' union, the University of Toledo Chapter of the American Association of University Professors ("the union"). The terms of the CBA provide that the University must hold the processing of Wedding's grievance in abeyance until a "final determination" is reached in this litigation. Citing that agreement, the University suspended the processing of Wedding's grievance when she filed this action. Wedding then filed a motion in the district court to stay the proceedings before that court and compel the utilization of the grievance procedure established in the CBA. The district court concluded that the CBA's suspension provision on which the University relied is illegal, because it allows the University to take an adverse employment action in response to an employee's participation in a statutorily protected activity, *i.e.*, the filing of a Title VII action. The district court therefore issued an order staying the proceedings in that court and compelling the use of the grievance procedure. *Wedding v. University of Toledo*, 862 F.Supp. 201 (N.D.Ohio 1994).

The University appeals from the district court's order. Before we can entertain the appeal, however, we must determine whether we have jurisdiction to review the district court's order at this juncture. For the reasons set forth below, we conclude that we have jurisdiction over this appeal and AFFIRM in part and REVERSE in part the district court's order. The cause will be remanded to the district court for the entry of an order consistent with this opinion.

## I.

Wedding is a tenured professor at the University. At some point during her employment, Wedding came to suspect that the University was paying her less for her work than it paid less-qualified male professors at the University. On November 30, 1992, Wedding filed grievances with the Ohio Civil Rights Commission ("OCRC") and the Equal Employment Opportunity Commission ("EEOC"), alleging sex discrimination. On June 21, 1993, while these grievances were pending, Wedding filed a grievance with the University, pursuant to the internal grievance procedure established by the CBA. In that grievance, Wedding alleged that the University had discriminated against her "in terms of wages and salary based upon [her] status as a female employee," in violation of Article 3.1 of the CBA.[1] The University, aware of the grievances pending before the state and federal commissions, decided to hold the processing of Wedding's internal grievance in abeyance, pursuant to Article 19.10 of the CBA, which provides:

The procedures described in this Article shall constitute the sole and exclusive method used for resolution of grievances. If a grievant seeks relief through a judicial or administrative forum outside of this grievance procedure for a subject matter covered by a grievance, the processing of the grievance shall be held in abeyance until the outside forum has issued a final determination or unless both the Employer and [the union] agree otherwise.

On December 1, 1993, the University resumed processing Wedding's internal grievance after receiving notice that the EEOC and the OCRC had concluded their investiga-

---

1. Article 3.1. states: "The Employer and [the union] agree that they shall not discriminate nor tolerate discrimination against any member in matters of wages, hours, terms and other conditions of employment on the basis of any characteristic prohibited by Federal or Ohio law."

tions into the grievances Wedding filed with them. On December 9, 1993, however, the University once again suspended the processing of the internal grievance pursuant to Article 19.10, after receiving notice that Wedding had filed this action.

On June 8, 1994, Wedding filed in the district court a "Motion Of Plaintiff To Stay Proceedings To Compel Utilization of University of Toledo Grievance System, etc.," in which she alleged that Article 19.10 of the CBA was "unlawful and violative of federal employment discrimination law." Because arbitration is the ultimate step in the CBA-established grievance procedure, the district court treated Wedding's motion as a motion to stay court proceedings and compel arbitration. The district court agreed with Wedding and, relying primarily on *EEOC v. Board of Governors,* 957 F.2d 424, 428 (7th Cir.), *cert. denied,* 506 U.S. 906, 113 S.Ct. 299, 121 L.Ed.2d 223 (1992), in which the Seventh Circuit held invalid a similar provision, issued an order granting Wedding's motion to stay the court proceedings and compelling the University to process her internal grievance. 884 F.Supp. 253, 256 (N.D.Ohio 1995). The University now appeals from that order.

## II.

■ Although Wedding has not challenged our jurisdiction to hear this appeal, as a court of limited jurisdiction, we must satisfy ourselves that we have jurisdiction before we reach the merits of the case. *Liberty Mut. Ins. Co. v. Wetzel,* 424 U.S. 737, 740, 96 S.Ct. 1202, 1204–05, 47 L.Ed.2d 435 (1976); *Mickler v. Nimishillen & T. Ry.,* 13 F.3d 184, 189 (6th Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 1835, 128 L.Ed.2d 463 (1994). We question our jurisdiction in this matter because of our concern that the order (holding invalid Article 19.10 of the CBA) from which the University appeals may not be a final judgment, and thus may not be immediately appealable. After reviewing the matter, however, we conclude that the "collateral order doctrine" provides us with jurisdiction over this appeal.

"The collateral order doctrine is best understood not as an exception to the 'final

decision' rule laid down by Congress in [28 U.S.C.] § 1291, but as a 'practical construction' of it." *Digital Equip. Corp. v. Desktop Direct Inc.,* —— U.S. ——, ——, 114 S.Ct. 1992, 1995, 128 L.Ed.2d 842 (1994) (quoting *Cohen v. Beneficial Indus. Loan Corp.,* 337 U.S. 541, 546, 69 S.Ct. 1221, 1225–26, 93 L.Ed. 1528 (1949)). In *Cohen,* the Supreme Court recognized that, in enacting section 1291, Congress left room for appellate jurisdiction over a "small class [of interlocutory orders] which finally determine claims of right separable from, and collateral to, rights asserted in the action, too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." 337 U.S. at 546, 69 S.Ct. at 1225–26. The Court recently explained *Cohen* as requiring that the order the appellant seeks to appeal must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." *Johnson v. Jones,* —— U.S. ——, ——, 115 S.Ct. 2151, 2155, 132 L.Ed.2d 238 (1995). "[T]hese requirements help qualify for immediate appeal classes of orders in which the considerations that favor immediate appeals seem comparatively strong and those that disfavor such appeals seem comparatively weak." *Id.* The district court's order in this case satisfies these requirements.

■ As for the first requirement, in determining whether a nonfinal order "conclusively determine[s] the disputed question," the Supreme Court has contrasted orders that are "inherently tentative," with orders that, while they technically could be amended, are "made with the expectation that they will be the final word on the subject addressed." *Gulfstream Aerospace Corp. v. Mayacamas Corp.,* 485 U.S. 271, 277, 108 S.Ct. 1133, 1137, 99 L.Ed.2d 296 (1988). The collateral order doctrine "disallow[s] appeal from any decision which is tentative, informal or incomplete." *Cohen,* 337 U.S. at 546, 69 S.Ct. at 1225. The district court's order in this case certainly appears to be that court's "final word" on the question of the legality of Arti-

cle 19.10. There is nothing "inherently tentative" about the court's decision, as there was no indication that the district court might reconsider or revise its order before it has an effect on the parties by requiring that they proceed forthwith with arbitration despite Article 19.10.

The district court's order meets the second requirement as well. The merits of the action Wedding filed in the district court involve sex discrimination in determining professors' salaries. Thus, the question of the legality of Article 19.10's grievance-procedure-suspension requirement is "completely separate from the merits of the action."

Finally, we are equally certain that the district court's order meets the third requirement. The requirement that an order be "effectively unreviewable" upon final judgment, "means that failure to review immediately may well cause significant harm." *Johnson,* —— U.S. at ——, 115 S.Ct. at 2155. In this case, all the harm that the district court's order can cause will occur before the case reaches a final judgment on the merits. Were we to determine, after a final judgment on the merits of this case, that Article 19.10 is legal, our decision would come too late to aid the University, for it will have already completed its grievance procedure.

## III.

■ Although we have jurisdiction to hear this appeal, we do not reach the substantive question presented by the parties, *i.e.,* whether Article 19.10 is legal, because we believe the district court decided this question prematurely. In the "Steelworkers trilogy" of opinions, the Supreme Court established that when an employer and its employees agree to a CBA providing for arbitration of grievances arising under that CBA, they have bargained for the decision

of an arbitrator, not of a court. *Monroe Auto Equip. Co. v. International Union, United Automotive,* 981 F.2d 261, 265 (6th Cir.1992); *see also United Steelworkers v. Enterprise Wheel & Car Corp.,* 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424 (1960); *United Steelworkers v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 1352–53, 4 L.Ed.2d 1409 (1960); *United Steelworkers v. American Mfg. Co.,* 363 U.S. 564, 566, 80 S.Ct. 1343, 1345–46, 4 L.Ed.2d 1403 (1960). More recently, the Court explained that

> [t]he courts have jurisdiction to enforce collective bargaining contracts; but where the contract provides grievance and arbitration procedures, those procedures must first be exhausted and courts must order resort to the private settlement mechanisms without dealing with the merits of the dispute. Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.

*United Paperworkers Int'l Union v. Misco, Inc.,* 484 U.S. 29, 37–38, 108 S.Ct. 364, 370, 98 L.Ed.2d 286 (1987).

This deferential approach to employment disputes capable of arbitration compels courts to avoid deciding legal questions that can be either decided or avoided by submission of the dispute to an arbitrator. The issue of the legality of Article 19.10, as presented to the district court in this case, is just such a question. We hold that the district court was correct in staying the proceedings before it, but that it erred in addressing the substantive question of Article 19.10's legality.[2] The district court should have granted the stay only, and thereby given the parties the opportunity to present an arbitrator with the question of whether a

---

2. It appears from the district court's opinion that the court thought it could issue the requested stay only upon a finding that Wedding was not "in default" in seeking to compel arbitration. 884 F.Supp. at 256. This is certainly true of requests to stay proceedings and compel arbitration which arise under the Federal Arbitration Act ("FAA"), 9 U.S.C. § 3. The FAA does not apply, however, to labor contracts. *Willis v. Dean Witter Reynolds, Inc.,* 948 F.2d 305, 311

(6th Cir.1991); *Bacashihua v. United States Postal Serv.,* 859 F.2d 402, 404 (6th Cir.1988). Nonetheless, the district court may have felt obliged to declare Article 19.10 illegal to avoid finding Wedding in default. If the district court proceeded as it did for this reason, doing so was unnecessary; since the FAA does not apply to this case, the district court had the discretion to issue the stay without satisfying section 3.

stay of district court proceedings is a sufficient "final decision" under Article 19.10 to allow the resumption of the internal grievance process.

Moreover, while we recognize that, under the provisions of the CBA, the arbitrator may not have the power to render a judgment on the legality of Article 19.10, we believe that, before that question is presented to the courts, the arbitrator should have the opportunity to apply and interpret the provisions of the CBA to determine whether, in the arbitrator's opinion, answering that question falls within that person's powers.

## IV.

We AFFIRM the part of the district court's order which stays proceedings in that court. We REVERSE the part of the order which compels the University to resume the processing of Wedding's grievance. We REMAND the case to the district court for the entry of an order consistent with this opinion.