MOORE, J., delivered the opinion of the court in which DAUGHTREY, J., joined. GIBBONS, j. Cpp. 456-58), delivered a separate dissenting opinion.
OPINION
KAREN NELSON MOORE, Circuit Judge, ,
At issue in this employment-discrimination case is a collective bargaining agreement (“CBA”) negotiated and signed by Defendants-Áppellees Jefferson County Board of Education (“JCBE”) and Jefferson County Teachers Association (“JCTA”). Under the CBA, if an employee believed that they were discriminated against, that employee could file a grievance with JCBE. However, if the employee subsequently filed a charge with the Equal Employment Opportunity Commission (“EEOC”), the CBA required that the grievance proceedings be held in abeyance. Such was the case here. Watford filed a grievance on the day she was terminated— October 13, 2010—and those proceedings are still in abeyance. Frustrated that her grievance proceedings were held in abeyance simply because she filed an EEOC charge, Watford brought this case, alleging that JCBE and JCTA retaliated against her for filing an EEOC charge. The dis *450 trict court awarded summary judgment against Watford, an award that is inconsistent with this court’s admonition that “an adverse action against [an] employee because the employee had pursued the statutorily protected activity of filing a charge with the EEOC” is “clearly” retaliation. See EEOC v. SunDance Rehabilitation Corp., 466 F.3d 490, 498 (6th Cir. 2006). Because of this inconsistency, and because the CBA is retaliatory on its face, we REVERSE the district court’s judgment and REMAND for further proceedings consistent with this opinion.
I. BACKGROUND
Watford’s eleven-year teaching career with Jefferson County Public Schools (“JCPS”) came to an end when JCPS terminated her on October 13, 2010. R. 40-4 (Termination Letter at 4) (Page ID #883). In Watford’s termination letter, the JCPS superintendent claimed that her final two years were marked by “insubordination and conduct unbecoming a teacher.” Id. Believing that her termination was instead due to discrimination on the basis of race, sex, and age, Watford filed a grievance with Defendant-Appellee Jefferson County Board of Education (“JCBE”) on the very day she was terminated. R. 44-7 (Watford Grievance No. T11-017-09-06) (Page ID #1171). So began Watford’s case.
A. The Collective Bargaining Agreement
At the heart of this dispute is the CBA between JCBE and JCTA. The CBA, which stipulates to teachers’ rights—from academic freedom to school safety—contains grievance procedures in the event “that there has been a violation, misinterpretation or improper application of one or more specific provisions of this Agreement or any complaint alleging improper, arbitrary, or discriminatory conduct.” R. 36-4 (CBA art. 29, § A.1) (Page ID #400). Grievances begin with informing the teacher’s “immediate supervisor or the appropriate administrator” and may be appealed up the hierarchy to the superintendent. See id. art. 29, § D (Page ID #402). If the teacher is still unsatisfied with the superintendent’s decision, the JCTA may submit the grievance to arbitration. Id. (Page ID #403). Throughout, the grievance process is intended to proceed, “as rapidly as possible,” with time limits set at each stage (which, naturally, may “be extended by mutual agreement”). See id. (Page ID #401-04).
The CBA also places limits on potential grievants’ choice of remedies. Kentucky has a dispute resolution process for teachers called an “administrative hearing tribunal,” see Ky. Rev. Stat. Ann. § 161.790 (West 2006), and teachers covered by the CBA must select either the tribunal process or the grievance process; they cannot pursue both. See R. 36-4 (CBA art. 9, § D) (Page ID #326). In addition, and centrally to this case, “[i]f the employee opts to pursue a complaint using another agency, the parties agree to hold the grievance in abeyance until the agency complaint is resolved.” See id. Finally, the CBA stipulates that “[t]he Association and the aggrieved party will be required to exhaust this Grievance Procedure including arbitration before seeking alternative remedies, provided that by doing so they will not be deemed to have waived or otherwise prejudiced any constitutional, statutory, or other legal rights that they may have.” Id. art. 29, § 1.3 (Page ID #405).
B. Watford’s Discrimination and Retaliation Allegations
As alluded to earlier, Watford has thoroughly availed herself of grievance procedures and EEOC charges. After the JCPS superintendent dismissed Watford’s afore *451 mentioned grievance, see R. 44-7 (Superintendent Decision Grievance No. T-11-017-09-06) (Page ID #1172), Watford sought to have the grievance arbitrated along with six other grievances she had filed before she was terminated. R. 36-6 (Feb. 11, 2011 E-mail from Bethel to Partee) (Page ID #428-29). Although the parties tentatively scheduled an arbitration to begin in July 2011, id., an EEOC charge that Watford filed against JCPS[1] on February 24, 2011, R. 34-8 (Charge No. 474-2011-00452) (Page ID #151), caused the arbitration to be held in abeyance. R. 37-7 (Feb. 25, 2011 Letter from Meredith to Flaherty) (Page ID #610).
Disappointed that the arbitration would not proceed as scheduled, Watford filed another EEOC charge, this time alleging that the arbitration was held in abeyance in retaliation for filing an EEOC charge. R. 37-8 (Charge No. 24J-2011-00066) (Page ID #612). A little over one year later, the EEOC issued a determination that there was “reasonable cause to believe that the [JCPS] held [Watford’s] grievance proceedings in abeyance in retaliation for her filing a charge of discrimination with the [EEOC].” R. 34-6 (Determination for Charge No. 24J-2011-00066) (Page ID #207-08). After receiving this determination, Watford filed a related EEOC charge against JCTA, stating that she “requested that JCPS grant [her] the right to pursue arbitration of [her] grievances through ... JCTA” but that her “request for arbitration was denied because [she] had filed a complaint of discrimination.” R. 34-5 (Charge No. 470-2012-03069) (Page ID #206).
Several months later, on January 31, 2013, the EEOC issued a dismissal and notice of rights with respect to Watford’s initial EEOC charge, noting that its investigation into whether JCPS violated Watford’s Title VII rights was inconclusive. R. 37-9 (Dismissal & Notice of Rights Charge No. 474-2011-00452) (Page ID #614). Arbitration then commenced on April 23, 2013. R. 38-4 (Arbitration Op. & Award at 2) (Page ID #649); see also R. 37-10 (Watford Dep. at 126-27) (Page ID #617).
On April 24, 2013, the second day of arbitration, Watford filed her complaint in the United States District Court for the Western District of Kentucky, naming JCPS as the defendant,[2] and alleging age discrimination, race discrimination, and retaliation in the form of her termination and holding the arbitration in abeyance. R. 1 (Compl.) (Page ID #1-11). In response, JCBE filed a motion to hold the arbitration in abeyance until the suit was resolved, and on August 9, 2013, the arbitrator agreed to do so. R. 38-4 (Arbitration Op. & Award at 12) (Page ID #659).
On October 25, 2013, Watford filed another EEOC charge, this time alleging that JCBE retaliated against her by holding the arbitration in abeyance for filing a district-court complaint.[3] R. 34-10 (Charge No. 470-2013-03310) (Page ID #216). The EEOC issued a notice of right to sue with *452 respect to this charge on December 31, 2014. R. 34-20 (Notice of Right to Sue within 90 Days Charge No. 470-2013-03310) (Page ID #265).
C. Procedural History
The underlying issues in this appeal arose when Watford filed a motion for partial summary judgment, claiming‘ that the evidence unequivocally showed that “JCPS retaliated against [her] by holding her arbitration proceedings relating to her termination in abeyance” and that “JCTA retaliated against [her] by acquiescing to the enforcement of Article 9, Section D.” R. 34-1 (Pl.’s Mem, Law in Support of Her Mot. Partial Summ. J. at 8-9) (Page ID #146-47). JCBE and JCTA individually opposed Watford’s motion and filed cross-motions for partial summary judgment. R. 36 (JCBE’s Cross-Mot. Summ. J.) (Page ID #269-70); R. 38 (JCTA’s Cross-Mot. Summ. J.) (Page ID #623-24). Of the view that the abeyance provision of the CBA was not an adverse employment action, the district court awarded summary judgment against Watford with respect to Counts IV (Retaliation—Grievance) and V (Retaliation-Arbitration) on February 17, 2016. Watford v. Jefferson Cty. Pub. Sch., 163 F.Supp.3d 456, 462-63 (W.D. Ky. 2016).
Several months after the district court issued its decision, Watford filed a motion for voluntary dismissal with respect to the remaining counts, I through III (Age Discrimination, Race Discrimination, and Retaliation—Termination), pursuant to Federal Rule of Civil Procedure 41(a)(2). R. 60 (Pl.’s Mot. Voluntary Dismissal) (Page ID #1686). The district court granted Watford’s motion and closed the case. R. 62 (Order Granting Pl.’s Mot. Voluntary Dismissal) (Page ID #1694). Shortly thereafter, Watford filed her notice of appeal with respect to the district court’s order on the motion and cross-motions for partial summary judgment. R. 63 (Notice of Appeal) (Page ID #1695).
II. DISCUSSION
We begin by addressing whether JCTA is a labor organization and whether, as such, it is exposed to liability under the anti-retaliation provisions. We then address whether JCBE and JCTA’s conduct amounted to an adverse employment action, the central question on appeal.
A. JCTA’s Status as a Labor Organization
JCTA raises two issues apart from the central question of whether the abeyance provision of the CBA constitutes an adverse employment action: (1) that we lack jurisdiction over JCTA and (2) that it could not have retaliated against Watford because it advocated on her behalf and did not seek to hold proceedings in abeyance.
First, and as a preliminary matter, JCTA argues that we lack jurisdiction because JCTA is assertedly not a “labor organization” pursuant to 29 U.S.C. § 630 or 42 U.S.C. § 2000e. See JCTA’s Br. at 1. However, the “labor organization” designation is located in the definitions section of the ADEA and Title VII, a “provision that ‘does not speak in jurisdictional terms or refer in any way to the jurisdiction of the district courts.’ ” See Arbaugh v. Y & H Corp., 546 U.S. 500, 515-16, 126 S.Ct. 1235, 163 L.Ed.2d 1097 (2006) (quoting Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 394, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982)), discussed in Cobb v. Contract Transp., Inc., 452 F.3d 543, 549-50 (6th Cir. 2006). It is therefore not a jurisdictional prerequisite. See id. Moreover, JCTA did not raise this argument below, R. 38-1 (JCTA’s Mem. of Law in Opp’n to Pl.’s Mot. Partial Summ. J. & in Support of Cross-Mot. for Partial Summ. J.) (Page ID #625-40), and so it is forfeited. See Lucaj v. FBI, 852 *453 F.3d 541, 547 n.4 (6th Cir. 2017). As to the true jurisdictional question, we observe that the district court had jurisdiction over this Title VII and ADEA case pursuant to 28 U.S.C. § 1331. We have jurisdiction pursuant to 28 U.S.C. § 1291.
Second, whether or not JCTA advocated on behalf of Watford against JCBE’s interpretation of the CBA, the fact remains that JCTA signed the CBA in the first place. “A union’s role as a joint participant in the negotiation of a' 'collective bargaining agreement has been found sufficient to render it liable under Title VII where the contractual provisions were discriminatory in operation or perpetuated the effects of past discrimination.” Farmer v. ARA Servs., Inc., 660 F.2d 1096, 1104 (6th Cir. 1981) (citing, inter alia, Int'l Bhd. of Teamsters v. United States, 431 U.S. 324, 348 n.30, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977)). As “a joint participant in the negotiation of a collective bargaining agreement,” id., JCTA is liable for agreeing to contractual provisions that “discriminate against any member ..: because he has opposed any practice made an unlawful employment practice by this subchap-ter, or because he has made a charge, testified, assisted, or participated in any Planner in an investigation, proceeding; or hearing under this subchapter.” 42 U.S.C. § 2000e-3(a) (2012); see also 29 U.S.C. § 623(d) (2012), Therefore, if the provisions of the CBA discriminate on this retaliatory .basis, JCTA is exposed to liability under Title VII and the ADEA. We discuss below whether these . provisions are retaliatory.
B. Adverse Employment Action
The dispositive question on- appeal is straightforward: Is it a materially adverse action if a CBA requires grievance proceedings to be held in abeyance upon the filing of an EEOC charge? Watford argues that it is, see Appellant’s Br. at 13-14, a position that JCTA took in prior stages of this litigation, JCTA’s' Br. at 9. JCBE argues and the district court held that it is not. See JCBE’s Br. at 10; Watford, 163 F.Supp.3d at 463. In our view, the facts of this case perfectly illustrate why holding grievance proceedings in abeyance, a step that has interminably stalled procedures intended to “be processed as rapidly as possible,” R. 36-4 (CBA art. 29, § D) (Page ID #401-02), would dissuade a reasonable worker from making. or supporting a charge of discrimination.
In order to “prevent[ ] an employer from interfering (through retaliation) with an employee’s efforts to secure or advance enforcement of [Title VIPs] basic guarantees,” Burlington N. & Santa Fe Ry. Co. v. White, 548 U.S. 53, 63, 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006), the act contains the following anti-retaliation provision: “It shall be an unlawful employment practice for an employer to discriminate against any of his employees ... or for a labor organization to discriminate against any member thereof ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.” 42 U.S.C. § 2000e-3(a). The ADEA contains a nearly identical anti-retaliation provision, 29 U.S.C. § 623(d), which is functionally equivalent for purposes of this analysis. See Fox v. Eagle Distrib. Co., 510 F.3d 587, 591 (6th Cir. 2007).
The focus of this appeal concerns whether JCBE and JCTA’s actions constitute an adverse employment action: that is, an employer “discriminate^] against any of his employees,” 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d), if its actions “would have been materially adverse to a reason *454 able employee or job applicant.” Burlington N., 548 U.S. at 57, 126 S.Ct. 2405. Significantly, “Title YII’s substantive provision and its antiretaliation provision are not coterminous”; the scope of the anti-retaliation provision is broader than the substantive provision. Id. at 67, 126 S.Ct. 2405. In keeping with this broader scope, we have held that terminating an in-house grievance proceeding because the employee filed an EEOC charge “clearly- constituted retaliation in violation of 29 U.S.C. § 623(d).” SunDance, 466 F.3d at 498 (citing EEOC v. Bd. of Governors of State Colls. & Univs., 957 F.2d 424, 430 (7th Cir. 1992)); see also Trayling v. St. Joseph Cty. Emp’rs Chapter of Local #2955, 953 F.Supp.2d 793, 798 (W.D. Mich. 2013), appeal dismissed 751 F.3d 425 (6th Cir. 2014) (dismissing the appeal because the district court’s order was not a final, appealable decision); Brinkley v. Bd. of Comm’rs, No. 2.-12-CV-00469, 2013 WL 394158, at *4-5 (S.D. Ohio Jan. 29, 2013); Wedding v. Univ. of Toledo, 884 F.Supp. 253, 255 (N.D. Ohio 1995), rev’d on other grounds, 89 F.3d 316 (6th Cir. 1996).
Because this court has characterized the termination of grievance proceedings as an adverse employment action, SunDance, 466 F.3d at 498, the dispositive question in this case is whether there is a material difference between terminating a grievance and holding it in abeyance. We hold that there is not a material difference. Both provisions make the availability of remedies contingent on not filing an EEOC charge. Singling out employees or union members on this basis “disertan-nate[s]” against them because they “opposed any practice made an unlawful employment practice by” Title VII and the ADEA. 42 U.S.C. § 2000e-3(a); 29 U.S.C. § 623(d). And “[a] benefit that is part and parcel of the employment relationship may not be doled out in a discriminatory fashion, even if the employer would be free ... not to provide the benefit at all.” Hishon v. King & Spalding, 467 U.S. 69, 75, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984), cited in Bd. of Governors, 957 F.2d at 430.
The CBA’s effect on a reasonable employee is not softened merely because grievances are held in abeyance rather than terminated. Employees avail themselves of the grievance process at least in part because grievances are supposed to “be processed as rapidly as possible.” R. 36-4 (CBA art. 29, § D) (Page ID #401-02). However, because the CBA requires grievances to be held in abeyance upon the filing of an EEOC charge, id. (Page ID #402), rapidity was never a realistic outcome for a charge-filing individual like Watford. Because the statute of limitations for filing an EEOC charge ran three hundred days after Watford was terminated, she had three hundred days to resolve her grievance before it would be held in abeyance. But on average, individuals wait 399 days after filing a grievance to receive an arbitration award, William H. Holley et al., The Labor Relations Process 569 & n.69 (11th ed. 2016) (citing Fed. Mediation & Conciliation Serv., https://www.fmcs.gov/). And in Watford’s case, in part because proceedings were held in abeyance, she waited 923 days until arbitration even began. Compare R. 40-4 (Termination Letter at 4) (Page ID #883), with R. 38-4 (Arbitration Op. & Award at 2) (Page ID #649).
Thus, Watford was presented with a false binary: either choose a speedy, extrajudicial resolution to her claims through the CBA’s grievance procedures or file an EEOC charge. Faced with this choice, many reasonable employees would be dissuaded from filing an EEOC charge, preferring instead to resolve their claims quickly and outside of the judicial process. Of course, we encourage alternative dispute resolution, but not at the expense of *455 Title VII and the ADEA’s guarantees. “A charge filed with the EEOC is not a complaint seeking relief. Rather it informs the EEOC of possible employment discrimination.” SunDance, 466 F.3d at 499. Employment practices that interfere with this information-gathering system run afoul of Title VII and the ADEA. And because the CBA does just that, we hold that it violates the antiretaliatory provisions of those statutes.
Defendants argue in response that Richardson v. Commission on Human Rights & Opportunities, 532 F.3d 114 (2d Cir. 2008), should guide our decision in this case. We disagree. With due respect to our sister circuit, Richardson applied an outdated definition of “adverse employment action” that is inconsistent with Burlington Northern. Under Richardson, the Second Circuit held that an employer may-take “reasonable defensive measures” so long as they “d[o] not affect the complainant’s work, working conditions, or compensation, and that its control over the handling of claims against it served several essential purposes that have nothing to do with retaliation, malice, or discrimination.” Richardson, 532 F.3d at 123 (internal quotation marks and alterations omitted) (quoting United States v. N.Y.C. Transit Auth., 97 F.3d 672, 677 (2d Cir. 1996)). As such, Richardson’s focus was on whether “the election-of-remedies provision [at issue] qualif[ied] as a ‘reasonable defensive measure.’” Id. at 124. Our focus, as the Supreme Court has instructed, is broader. We ask whether a reasonable employee would be dissuaded from filing a charge. As the Court observed, “the standard is tied to the challenged retaliatory act, not the underlying conduct that forms the basis of the Title VII complaint.” Burlington Northern, 548 U.S. at 68-69, 126 S.Ct. 2405. Simply put, “the antiretaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace.” Id. at 57, 126 S.Ct. 2405. And because the Richardson court so confined the forbidden actions and harms, its reasoning does not guide our decision.
III. CONCLUSION
Title VII and the ADEA protect employees from employers and labor organizations who would restrict the employees’ ability to file EEOC charges. In recognition of this principle, we REVERSE the district court’s judgment and REMAND for further proceedings consistent with this opinion.

. Although Watford initially named JCPS in her EEOC charge and district-court complaint, R. 34-3 (Charge No. 474-2011-00452) (Page ID #151); R. 1 (Compl. at 1) (Page ID #1), the parties agreed to substitute JCBE "as the proper party for the currently named Defendant, Jefferson County Public Schools.” R. 7 (Agreed Order) (Page ID #35).

. Watford amended her complaint to add JCTA and other retaliation counts on Decem-her 30, 2014. R. 21 (Am. Compl.) (Page ID #78-91).

.It appears that Watford filed a similar charge against JCTA, see R. 34-1 (at 4) (Page ID #142), although this charge is not in the record. However, Watford purports to have the notice of right to sue associated with this charge, which the EEOC issued on September 29, 2014. R. 34-18 (Notice of Right to Sue Charge No. 470-2013-03311) (Page ID #263).