RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 18a0258p.06

# UNITED STATES COURT OF APPEALS

### FOR THE SIXTH CIRCUIT

───────────────

MELISSA BRUMLEY,

        *Plaintiff-Appellant,*

    *v.*

UNITED PARCEL SERVICE, INC.,

        *Defendant-Appellee.*

No. 18-5453

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:17-cv-00677—Aleta Arthur Trauger, District Judge.

Decided and Filed: November 30, 2018

Before: CLAY, McKEAGUE, and BUSH, Circuit Judges.

───────────────

#### COUNSEL

**ON BRIEF:** Constance Mann, THE LAW OFFICES OF CONSTANCE MANN, Franklin, Tennessee, for Appellant. J. Day Peake III, William E. Shreve, Jr., PHELPS DUNBAR LLP, Nashville, Tennessee, for Appellee.

───────────────

#### OPINION

───────────────

McKEAGUE, Circuit Judge. Melissa Brumley injured her back while unloading heavy packages from a United Parcel Service, Inc. (UPS) truck. After receiving workers' compensation and taking a leave of absence, Brumley returned to work without any injury-related restrictions. Several months later, she sued UPS for failure to accommodate, in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* (ADA), as amended by the

ADA Amendments Act of 2008.  The district court granted UPS's motion for summary judgment and denied Brumley's motion for summary judgment as moot.  We **AFFIRM**.

**I**

Brumley works primarily as a "sorter" at a UPS warehouse in Franklin, Tennessee. Sorters do what the title suggests: they sort mail in preparation for delivery.  A subset of the sorter position relevant to this case is called "local sort."  That position involves taking small packages, weighing 10 pounds or less, from a conveyer belt and placing them in various slots depending on their final destination.  The sorter then bundles the sorted packages into a bag and lifts the bag onto another conveyer belt for transportation to a delivery car.  According to UPS, filled bags frequently weigh between 20 and 50 pounds and occasionally weigh between 51 and 70 pounds.  Brumley claims that, in her five years working local sort, she never lifted a full 70 pounds.  But Brumley admits that when she was hired, she knew that working as a sorter might require her to lift packages weighing that much or more.  The written job description of "sorter" provides that sorters in all sorting positions must frequently lift 20 to 50 pounds and occasionally lift 51 to 70 pounds.

Until she injured her back, Brumley also worked as a temporary cover driver, delivering and picking up packages in UPS's familiar brown trucks.  As a temporary cover driver, Brumley filled in for sick or vacationing full-time drivers or when routes were especially busy.  According to UPS, that position also requires employees to sometimes lift packages weighing up to 70 pounds.  Brumley confirms she has lifted 70-pound packages working as a driver.

In December 2015, on one of her delivery routes, Brumley injured her back while unloading heavy packages from the delivery truck.  She received workers' compensation benefits for the injury.  And in January 2016, she and UPS entered into an agreement for her to perform safety inspections of UPS's package trucks as part of a 30-day Temporary Alternative Work (TAW) arrangement while she recovered from the injury.  At the end of the TAW-period, Brumley assumed temporary disability status and went on leave from work through July 2016.

On July 29, 2016, before she returned to work, Brumley had a follow-up visit with Dr. John Klekamp, the doctor she had chosen from a panel of UPS doctors to treat her for her back

injury. Dr. Klekamp gave Brumley two return-to-work notes that included permanent work restrictions. The first instructed Brumley to avoid lifting more than 30 pounds and to avoid pushing or pulling more than 30.5 pounds. The second stated: "[Brumley] may return to work on 07/29/2016. Restrictions: May return to local sort. Restriction: No driving." That same day, Brumley clocked in to work and hand-delivered both notes to her supervisor, Richard Bonee. But Bonee would not allow Brumley to work, because both of Brumley's positions—sorter and driver—required lifting over 30 pounds. So he sent Brumley home. Bonee also informed Brumley that she could receive work accommodations to account for her restrictions.

Brumley is a member of the International Brotherhood of Teamsters, Local 480. On August 16, 2016, she began filing grievances with the Union, complaining that she was improperly denied the right to work with permanent restrictions despite presenting UPS with a return-to-work note from her doctor. On August 18, 2016, UPS Occupational Health Supervisor Jurgen Rosner became aware that Brumley had requested a job-related accommodation.[1] That same day, Rosner sent Brumley a letter informing her that UPS was initiating an internal ADA "interactive process" and asked Brumley to submit two medical forms to allow the company to evaluate her restrictions and identify possible accommodations. Those medical forms were a "Request for Medical Information" form to be completed by Dr. Klekamp and an "Authorization for Release of Health Information" to be completed by Brumley. In his letter, Rosner also explained to Brumley that, "[b]ecause we cannot continue our assessment of your request [for accommodations] until we have received the completed medical forms, it is to your benefit to return this information as quickly as possible, preferably within the next two weeks." The letter was scheduled for delivery on August 22. On September 1, after receiving nothing from Brumley, Rosner sent Brumley a second letter, reminding her to submit the requested medical forms. Later, on September 12, Rosner sent a third letter asking Brumley about the status of her outstanding paperwork. On September 14, Brumley faxed both forms to UPS.

---

[1]As the district court noted, the record is unclear about how Brumley requested an accommodation. The district court surmised that UPS likely treated Brumley's August 16, 2016 Union grievance as a request for an accommodation and then designated Rosner to respond to it. Neither party presents a conflicting view of the record on appeal.

Once UPS received the forms, Rosner and Human Resources Manager Elveta Cooper coordinated with Brumley to schedule a meeting to discuss potential accommodations for Brumley. They met on October 11, which was—according to UPS—the earliest date that Rosner's and Cooper's schedule would allow. At that meeting, Cooper explained to Brumley that they would review Brumley's restrictions and try to find an appropriate position at UPS that she could fill. Brumley stated, however, that she desired to voluntarily discontinue the ADA interactive process and return to Dr. Klekamp to have her work restrictions lifted. Cooper responded that if Dr. Klekamp removed Brumley's restrictions, Brumley could return to work without accommodations and the interactive process would end.

So on October 27, 2016, Brumley met with Dr. Klekamp and requested that he remove her restrictions. He did so, and Brumley returned to work a few days later. Because Brumley had returned to work without restrictions, UPS officially closed the interactive process on November 7. Brumley continues to work at UPS to this day.

Several months later, Brumley initiated this action, bringing claims under the ADA for failure to accommodate, a claim under the ADA for disability discrimination, a claim for workers' compensation retaliation, a claim for denial of right to leave under the Family and Medical Leave Act, and a claim for disability discrimination under the Tennessee Human Rights Act and the Tennessee Disability Act.[2] She seeks damages for lost wages and employment benefits for the limited period of time that she was home from work during the interactive process. The district court granted summary judgment in UPS's favor on all of Brumley's claims, denied Brumley's motion for summary judgment as moot,[3] and denied Brumley's motion to alter or amend the judgment. Brumley appeals.

---

[2]We note that Brumley has not challenged the district court's dismissal of her claim for disability discrimination under the Tennessee Human Rights Act and the Tennessee Disability Act on appeal. Brumley withdrew her claims for workers' compensation retaliation and her claim for Family and Medical Leave Act violations in her opposition to UPS's motion for summary judgment.

[3]Brumley filed a response in opposition to UPS's motion for summary judgment and a counter-motion for summary judgment on December 5, 2017. That was twenty days after the district court's deadline for filing dispositive motions. The district court determined that even if it could consider the motion, it was nonetheless mooted by the court's conclusion that UPS was entitled to summary judgment in its favor.

## II

Brumley asserts that the district court erred in its rulings on UPS's motion for summary judgment and on Brumley's motion to alter or amend.  We address each ruling in turn.

## A

We review the court's summary judgment ruling *de novo*, construing the facts in the light most favorable to Brumley.  *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017) (citation omitted).  Summary judgment is appropriate only if UPS can show "that there is no genuine dispute as to any material fact and [UPS] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

The ADA prohibits discrimination "against a qualified individual on the basis of disability in regard to . . . [the] terms, conditions, and privileges of employment."  42 U.S.C. § 12112(a).  According to the Act, discrimination includes a failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity."  *Id.* § 12112(b)(5)(A).  To establish a prima facie failure-to-accommodate claim, Brumley must show that (1) she was disabled within the meaning of the ADA; (2) she was otherwise qualified for her position, with or without reasonable accommodation; (3) UPS knew or had reason to know about her disability; (4) she requested an accommodation; and (5) UPS failed to provide the necessary accommodation.  *Deister v. Auto Club Ins. Ass'n*, 647 F. App'x 652, 657 (6th Cir. 2016) (citing *Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982–83 (6th Cir. 2011)); *see also Jacobs v. N.C. Admin. Office of the Courts*, 780 F.3d 562, 579 (4th Cir. 2015).

Brumley purports to bring failure-to-accommodate claims based on both direct and indirect evidence.  But ADA discrimination "claims premised upon an employer's failure to offer a reasonable accommodation necessarily involve direct evidence (the failure to accommodate) of discrimination"; the familiar *McDonnell-Douglas* burden-shifting framework (applicable to claims premised on indirect evidence) therefore does not apply.  *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868–69 (6th Cir. 2007).  Under the "direct-evidence framework," once an ADA plaintiff establishes that an employer failed to accommodate a known disability, the

employer bears the burden "of proving that . . . a proposed accommodation will impose an undue hardship upon the employer." *Id.* (quoting *Hedrick v. W. Reserve Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004)).

The district court concluded that Brumley failed to establish a prima facie case because, even assuming the first four elements of the claim were met, Brumley could not show that UPS failed to grant her accommodation request. Rather, Brumley voluntarily abandoned the interactive process. Therefore, the district court reasoned, Brumley could not demonstrate that UPS was unwilling to accommodate her permanent restrictions. Brumley contends that ruling was in error for two main reasons: (1) UPS should have allowed her to work in local sort when she returned to work, because her doctor's note stated that she was able to work in local sort, and (2) UPS coerced Brumley into abandoning the interactive process and having her restrictions lifted. We disagree.[4]

The ADA does not obligate employers to make on-the-spot accommodations of the employee's choosing. Under the ADA, an employer must engage in an "informal, interactive process" with the employee to "identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome those limitations." *Kleiber*, 485 F.3d at 871 (quoting 29 C.F.R. § 1630.2(o)(3)). For employees seeking accommodations, "the interactive process is mandatory, and both parties have a duty to participate in good faith." *Id.*; *see also EEOC v. Chevron Phillips Chem. Co., LP*, 570 F.3d 606, 621 (5th Cir. 2009) ("Once an employee makes such a request . . . the employer is obligated by law to engage in an interactive process: a meaningful dialogue with the employee to find the best means of accommodating th[e] disability." (internal quotation marks and citation omitted)). Examples of how a party may fail to engage in the process in good faith include causing unnecessary delays or obstructing the process, as well as failing to adequately communicate or provide information during the process.

---

[4]Brumley also purported to bring a separate ADA discrimination claim, but that claim appears no different from her failure-to-accommodate claim. In her "discrimination" claim, Brumley alleges that UPS refuses to "accommodate permanent work restrictions." The district court concluded that, to the extent this is a separate claim, it fails for the same reason as Brumley's other claim fails: "Brumley has no evidence to support her assertion that UPS never accommodates restrictions; UPS did not fail to offer her a reasonable accommodation or to engage in good faith in the interactive process; and her employment was never terminated." We agree and affirm the district court's summary judgment ruling on this basis as well.

*Kleiber*, 485 F.3d at 871; *accord Beck v. Univ. of Wisc. Bd. of Regents*, 75 F.3d 1130, 1135 (7th Cir. 1996). An employer's refusal to provide an accommodation to the position of the employee's choice immediately upon the employee's request is not, in and of itself, a failure to accommodate under the ADA.

Thus, UPS had no legal obligation to place Brumley in local sort on the very day she returned to work. UPS had discretion to provide a reasonable accommodation as identified through the interactive process. For this reason, if Brumley voluntarily abandoned the process, UPS is not liable for failing to provide a reasonable accommodation.

However, Brumley argues that she did not voluntarily abandon the interactive process—rather, she was coerced into doing so by hub manager Bonee. Nevertheless, we hold that the evidence Brumley cites is insufficient to create a genuine issue of material fact as to her voluntariness. Brumley repeatedly asserts that when Bonee sent her home from work, he announced that "UPS never allows someone to work with permanent work restrictions."[5] According to Brumley, that assertion just goes to show that she could not have returned to work as long as she was permanently restricted. Therefore, her decision to terminate the interactive process and have her doctor lift her restrictions was not truly voluntary. Brumley's testimony contradicts that assertion, however. In a worker's compensation hearing, she stated: "Richard [Bonee] said I could not return with permanent restrictions . . . . Well, I'm sorry. I take that back. He did say there was supposed to be work accommodations for permanent work restrictions."[6] And Brumley admitted that Cooper informed her that the purpose of the interactive process was to allow UPS to review Brumley's restrictions and "find a position" for her. Moreover, Brumley agreed that she could have "proceeded along with the ADA

---

[5]As additional evidence, Brumley attempts to rely on a partial, unsigned statement purporting to be from UPS supervisor Doug Grissom, explaining that UPS does not allow permanent work restrictions. As an excerpt that is not signed and properly attested, this document is not an affidavit that complies with Federal Rule of Civil Procedure 56(e). *See Sfakianos v. Shelby Cty. Gov't*, 481 F. App'x 244, 245 (6th Cir. 2012). Thus, Brumley cannot rely on it to support her claim.

[6]Brumley argues for the first time on appeal that her statements at the workers' compensation hearing concerned events relating to another injury, not the one at issue in this case. UPS brought this testimony to the district court's attention in its briefing, and Brumley did not deny in her response that this testimony related to the relevant injury. There is no evidence supporting Brumley's assertion, and we will not reverse a district court based solely on factual assertions raised for the first time on appeal.

accommodation process and located another placement" at UPS had she not chosen to have her restrictions removed instead.  She admits she made the "decision to return to the doctor and get a revised restriction form."

The evidence in the record does not create a genuine issue of material fact as to the voluntariness of Brumley's decision.  Accordingly, we find that Brumley cannot state a prima facie failure-to-accommodate claim.  We thus affirm the district court's grant of summary judgment in favor of UPS.

**B**

When it comes to the district court's denial of Brumley's motion for reconsideration under Rule 59(e), our review is only for abuse of discretion.  *Kerr for Kerr v. Comm'r of Soc. Sec.*, 874 F.3d 926, 930 (6th Cir. 2017).  A district court may alter or amend its judgment based on "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice."  *Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 615 (6th Cir. 2010) (quotation omitted).  A Rule 59 motion "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 486 n.5 (2008) (quotation omitted).

Brumley's Rule 59 motion rested on a purported change in controlling law and newly discovered evidence.  The district court denied the motion on both grounds.  We find no abuse of discretion.

According to Brumley, the change in controlling law stems from our decision in *Watford v. Jefferson Cty. Pub. Sch.*, 870 F.3d 448 (6th Cir. 2017).  *Watford* concluded that holding an employee's grievance proceeding in abeyance if the employee also files a charge against the company with the Equal Employment Opportunity Commission is a retaliatory action that may violate Title VII.  *Id.* at 454–55.  In applying that case to her own, Brumley formulates a new argument: because UPS held her Union grievances in abeyance once her interactive process was initiated, it retaliated against her in violation of the ADA.  But Brumley did not bring an ADA retaliation claim.  And at no point prior to her Rule 59 motion did she argue either that UPS held

her Union grievances in abeyance[7] or that UPS retaliated against her for seeking an accommodation. Her Rule 59 motion was an improper vehicle for raising new arguments based on an unalleged retaliation claim. *Nat'l Ecological Found. v. Alexander*, 496 F.3d 466, 477 (6th Cir. 2007). For at least this reason, the district court did not abuse its discretion by denying Brumley's motion on this basis.

Brumley also asserts that the district court erred in not granting her Rule 59 motion based on newly discovered evidence. That evidence stems from a second work-related injury that Brumley incurred on November 14, 2017, while this lawsuit was pending. After that injury, Brumley obtained a doctor's release allowing her to return to work with a temporary lifting restriction through December 13, 2107. According to Brumley, the fact that UPS allowed her to return to work with that lifting restriction proves that UPS previously discriminated against her when it required her to go through the interactive process before returning to work after her December 2015 injury (the injury that is the basis of this lawsuit).

The district court rejected Brumley's motion on this basis as well. It first concluded that the evidence was not newly discovered because the doctor's release was generated a few days before she filed her response in opposition to UPS's motion for summary judgment. Regardless, the district court explained, the evidence was irrelevant because it went to a *temporary* lifting restriction, whereas the basis of Brumley's discrimination claim is her previous *permanent* lifting restriction. Accordingly, the evidence would not have helped Brumley prove her failure-to-accommodate claim. Brumley fails to show that the district court's ruling was an abuse of discretion.

Finally, Brumley argues that the district court erred in denying her request—also embedded in her Rule 59 motion—to reopen discovery based on the above and other "newly discovered evidence that the affidavits offered by UPS are not credible or at least there is a genuine issue of material fact." The first time that Brumley requested the district court to reopen discovery was in her Rule 59 motion to alter or amend the judgment. The request was therefore too late. Instead, Brumley should have filed a motion for relief under Rule 56(d).

---

[7]Brumley also cites no record evidence demonstrating that UPS actually held her Union grievances in abeyance.

*Cf. Hackworth v. Progressive Cas. Ins. Co.*, 468 F.3d 722, 732 (10th Cir. 2006) (explaining that a party seeking to obtain additional discovery "must attempt to do so by submitting an affidavit in direct response to a motion for summary judgment, not following the district court's disposition of that motion" (citing Fed. R. Civ. P. 56)). Accordingly, the district court did not abuse its discretion in denying Brumley's late request to seek additional discovery.

## III

For all these reasons, we **AFFIRM**.