NOT RECOMMENDED FOR PUBLICATION
File Name: 26a0139n.06

No. 25-5653

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

FILED
Mar 13, 2026
KELLY L. STEPHENS, Clerk

| | |
|---|---|
| JANE DOE, by and through C.B., | ) |
| Plaintiff-Appellant, | ) |
| | ) |
| v. | ) ON APPEAL FROM THE |
| | ) UNITED STATES DISTRICT |
| | ) COURT FOR THE EASTERN |
| | ) DISTRICT OF KENTUCKY |
| DIOCESE OF COVINGTON, et al., | ) |
| Defendants-Appellees. | ) OPINION |
| | ) |

Before: GILMAN, KETHLEDGE, and HERMANDORFER, Circuit Judges.

KETHLEDGE, Circuit Judge. Jane Doe claims that her school failed to respond adequately to her complaints of racial harassment, in violation of federal and state law. The district court granted summary judgment to the defendants. We affirm.

I.

Doe is an African-American student who attended eighth grade at St. Joseph's Middle School, within the Catholic Diocese of Covington. In March 2023, Doe refused a classmate's request to share answers on schoolwork; in response, the classmate called her the "n-word." Doe reported the incident to Principal Emily Urlage, who investigated. The classmate denied using the slur, and a witness said he did not hear it, so Urlage imposed no discipline. The classmate then called Doe a "snitch" for the rest of the school year.

Weeks later, Doe's English teacher, ClyDenna Hehman, asked the class, "Do we have any Black students in this school[?]" Doe—the only ethnic minority student present—was

uncomfortable and did not raise her hand. The next day, Hehman discussed racial prejudice to prepare the class to read about a boy who grew up during the internment of Japanese-Americans in World War II. Hehman explained that "Jap" is an offensive term and compared it to other racial slurs, including the "n-word," which she said aloud.

Doe's mother and stepfather complained to Urlage, who said she would investigate. Urlage first consulted the parish pastor, Monsignor Gerald Reinersman, about how to proceed. She then met with Doe, heard her account, and—with Doe's agreement—moved her to another English class. Urlage also questioned two other students and later met with Hehman, who admitted that she had used the "n-word" during the lesson. Hehman said she had not intended to offend anyone and had not known before the meeting that Doe—who is biracial—was African American. Urlage also held a conference with Doe's parents, Reinersman, Hehman, and the assistant principal. Hehman later wrote Doe an apology letter.

Urlage talked with other students from Hehman's classes and concluded that Hehman had not acted with discriminatory intent. Although Urlage imposed no formal discipline, she removed Hehman as a chaperone from Doe's class trip and arranged cultural-diversity training for the faculty. In addition, Urlage later decided not to renew Hehman's teaching contract for the next school year, based in part on the lesson. The diocesan superintendent of schools later met with Urlage and Hehman, and determined that the school had handled the matter appropriately.

After Doe graduated in May 2023, her mother, C.B., filed suit against the Diocese, St. Joseph Catholic Church, Hehman, Reinersman, and John Does 1-20. The district court dismissed most of the claims on the pleadings and granted summary judgment to the defendants on the rest. Doe now appeals the grant of summary judgment on three claims against St. Joseph, the Diocese,

and Reinersman (collectively, "the Diocese"): race discrimination under both Title VI of the Civil Rights Act of 1964 and 42 U.S.C. § 1981, and state-law negligence.

II.

We review de novo the district court's grant of summary judgment. *See Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018).

Doe advances two theories of recovery against the Diocese for racial harassment under Title VI. Each stems from the Diocese's alleged deliberate indifference to Doe's harassment, a claim "we assume without deciding is cognizable for racial discrimination under Title VI." *Malick v. Croswell-Lexington Dist. Schs.*, 148 F.4th 855, 862 (6th Cir. 2025) (cleaned up). To prevail, Doe must show "that she suffered actionable harassment and that her school responded to her complaints with deliberate indifference." *Id.*

Doe first argues that the Diocese failed to respond adequately to racial harassment by her classmate. To support such a claim, such harassment must be "severe, pervasive, and objectively offensive." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 650 (1999). Here, as the district court observed, Doe identifies only a single race-based incident in which a classmate called her the "n-word." Although deplorable, a student's one-time use of the slur is not pervasive. *See Kollaritsch v. Mich. State Univ. Bd. of Trustees*, 944 F.3d 613, 620 (6th Cir. 2019). Doe also testified that the classmate called her a "snitch" for the rest of the school year. But that term—unrelated to race—amounts to mere "juvenile behavior among students," which is also not actionable harassment. *Id.* The district court properly granted summary judgment to the Diocese on this claim.

Doe next argues that the Diocese was deliberately indifferent to racial harassment by Hehman. A school acts with deliberate indifference when its response to harassment is "clearly

unreasonable." *Malick*, 148 F.4th at 862 (cleaned up). A good-faith response defeats liability. *Id.* Here, after Doe's parents complained about Hehman's lesson, Urlage consulted Reinersman, met with Doe and other students, and spoke with Hehman. Urlage then moved Doe to another class with her agreement, removed Hehman as a chaperone for Doe's class trip, arranged training for faculty, and later declined to renew Hehman's contract in part because of the lesson. The diocesan superintendent also investigated and concluded that no further action was necessary. These steps reflect a good-faith response to Doe's complaint. We agree with the district court that Doe lacks evidence creating a genuine issue as to whether the Diocese was deliberately indifferent. *See Malick*, 148 F.4th at 863-66.

Doe raises two other claims based on the Diocese's response to her complaints of racial harassment. First, she argues that, in violation of 42 U.S.C. § 1981, the Diocese denied her the benefit of her contractual bargain as a student at the school by failing to investigate her complaints and discipline the persons involved. *See Amini v. Oberlin Coll.*, 440 F.3d 350, 358 (6th Cir. 2006). Second, she argues that the Diocese was negligent in its response to these events, and breached its duty of care to provide a safe learning environment. *See Williams v. Kentucky Dep't of Educ.*, 113 S.W.3d 145, 148 (Ky. 2003).

Both claims fail for the same reason: Urlage promptly investigated Doe's allegations and responded appropriately to the investigation's findings. After the incident with Doe's classmate, Urlage interviewed the accused student and a witness; and when neither substantiated the allegation, she imposed no discipline. Urlage also investigated Doe's complaints about Hehman and took measures to ensure Doe's comfort in the weeks leading up to graduation.

On these facts, no reasonable jury could find that the Diocese's investigation impaired Doe's contractual rights because of her race. *See Amini*, 440 F.3d at 358. Nor could a jury

conclude that the Diocese's response was negligent under Kentucky law.  *See S.S. v. E. Kentucky Univ.*, 532 F.3d 445, 459 (6th Cir. 2008).

The district court's judgment is affirmed.